In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-2636

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARK MCGILL,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17-cr-149 — **Virginia M. Kendall**, *Judge.*

ARGUED MARCH 30, 2021 — DECIDED AUGUST 10, 2021

Before KANNE, BRENNAN, and SCUDDER, *Circuit Judges.*

KANNE, *Circuit Judge.* During a visit to Mark McGill's home, McGill's probation officer seized a cell phone without warrant to do so. Law enforcement later discovered thousands of images of child pornography on the phone and charged McGill accordingly. McGill, arguing that his phone had been unlawfully seized, moved to suppress the phone and all evidence obtained from it.

The district court denied this motion on a number of independent grounds, concluding that McGill's cell phone was lawfully seized or otherwise need not be suppressed. We agree with this conclusion and thus affirm the district court's decision denying McGill's motion to suppress.

## I. BACKGROUND

In a prior case years ago, Mark McGill was convicted of possessing child pornography and sentenced to sixty-five months' imprisonment. In November 2014, he completed his prison sentence and began serving seven years of supervised release.

The conditions of McGill's supervised release prohibited him from "commit[ting] another federal, state, or local crime" and required him to "permit a probation officer to visit him at any time at home or elsewhere and … [to] permit confiscation of any contraband observed in plain view of the probation officer." He also agreed to "comply with the requirements of the Computer and Internet Monitoring Program," under which he, among other things, "consent[ed] to the installation of computer monitoring software on all identified computers to which [he] has access." The conditions further provided that he "shall not remove, tamper with, reverse engineer, or in any way circumvent the software."

McGill has a history of violating the terms of his supervised release. In October 2015, his probation officer discovered that McGill had viewed sexually stimulating videos and images of minors on his monitored cell phone. McGill admitted to the violation, and the district court added a condition of supervised release that prohibited McGill from "possess[ing] or hav[ing] under his control any pornographic,

sexually oriented, or sexually stimulating materials, includ-ing visual, auditory, telephonic, or electronic media, com-puter program, or services." McGill later failed two poly-graph tests, administered as part of his sex offender treatment program, which detected deception when he was asked whether he had sexual contact with a minor.

The events underlying this appeal occurred on February 3, 2017, when Probation Officer Hence Williams conducted a home visit at McGill's residence. Officer Williams had sub-stantial experience, having worked as a probation officer for twelve years and specialized in supervising sex offenders for five years. He had been supervising McGill for about nine months before this home visit.

When Officer Williams entered McGill's bedroom, he ob-served two cell phones—a black cell phone that the officer rec-ognized as McGill's monitored phone and an unknown white cell phone in a black case on a table by the bed.

According to Officer Williams, McGill moved around the room in an attempt to block the officer's view of the second cell phone. When Officer Williams asked about the phone, McGill told him that it was an old cell phone that no longer worked and that he only used it to charge a spare battery for the monitored phone. McGill removed the battery to show that it fit into the other phone. Officer Williams did not be-lieve that explanation. At Officer Williams's request, McGill replaced the battery and handed the white phone to him.

Officer Williams claims that McGill's demeanor changed when he asked about the phone. He became "deflated" and "sad" and said that he "would go back to prison for a long time if the judge found out what was on th[e] phone." Officer

Williams asked if there was child pornography on the phone, and McGill said, "there is." For his part, McGill denies that he made any admissions about what was on the phone or that he acted suspiciously.

McGill asserts that Officer Williams then said, "I'm taking the phone," and ended the encounter. Officer Williams, on the other hand, claims that he was able to power on the phone, saw that the background photo was of a young boy's face, and then powered it off. In either case, Officer Williams took the phone with him and turned it over to the FBI, who obtained a search warrant. The subsequent search of the phone revealed thousands of images of child pornography.

McGill was again charged with possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). He filed a motion to suppress the evidence recovered from the unmonitored phone as the fruit of an unlawful seizure. After an evidentiary hearing at which Officer Williams testified and McGill did not (he relied merely on statements in an affidavit), the district court denied McGill's motion for four reasons: (1) the phone was contraband in Officer Williams's plain view; (2) the seizure was supported by Officer Williams's reasonable suspicion that the phone contained evidence of a supervised-release violation or crime; (3) the discovery of the evidence was inevitable; and (4) Officer Williams acted in good faith when he seized the phone.

McGill then entered a conditional plea of guilty which reserved his right to appeal the district court's denial of his motion to suppress. Fed. R. Crim. P. 11(a)(2). The district court accepted the plea and sentenced McGill to 168 months' imprisonment and ten years' supervised release. McGill timely appealed.

## II. ANALYSIS

When reviewing a district court's decision denying a motion to suppress evidence, we review the court's legal conclusions *de novo* and its factual findings for clear error. *United States v. Mojica*, 863 F.3d 727, 731 (7th Cir. 2017). On clear-error review, we reverse the court's findings only if our "review of the all the evidence leaves us with the definite and firm conviction that a mistake has been made." *United States v. Love*, 706 F.3d 832, 842 (7th Cir. 2013).

The district court's analysis in this case was spot on. The evidence from McGill's cell phone need not be suppressed for two independent reasons. First, the seizure of McGill's cell phone was lawful. Second, even if the phone was unlawfully seized, the evidence may still be admitted under an exception to the exclusionary rule.

*A. The Seizure of McGill's Cell Phone Did Not Violate the Fourth Amendment*

Generally, "searches and seizures inside a home without a warrant are presumptively unreasonable" under the Fourth Amendment. *Kentucky v. King*, 563 U.S. 452, 459 (2011) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). But "the warrant requirement is subject to certain reasonable exceptions." *Id.* (citing *Brigham City*, 547 U.S. at 403).

One such exception is known as the plain-view doctrine, which permits officers in certain situations to seize property without a warrant when the property's incriminating nature is "immediately apparent." *See United States v. Contreras*, 820 F.3d 255, 262 (7th Cir. 2016). Another exception permits law enforcement to seize property in a probationer's home so long as the officer has reasonable suspicion that the property is

evidence of a crime. *See United States v. Knights*, 534 U.S. 112, 120 (2001).

In this case, there is no question that Officer Williams "seized" McGill's phone within the meaning of the Fourth Amendment and that he had no warrant to do so. *See United States v. Jacobsen*, 466 U.S. 109, 113 (1984) ("A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property."). Nor does anyone question that "a probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches [and seizures] be reasonable." *United States v. Caya*, 956 F.3d 498, 502 (7th Cir. 2020) (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987)).

Thus, the debate here is whether Officer William's warrantless seizure fell into an exception to the warrant requirement. We find that it did.

*1. Plain View*

Government officials may seize property without a warrant under the plain-view doctrine if (1) the officer is lawfully present at the place of the seizure, (2) the seized object is in the plain view of the officer, and (3) the incriminating nature of the object is immediately apparent. *United States v. Raney*, 342 F.3d 551, 558–59 (7th Cir. 2003) (citing *United States v. Bruce*, 109 F.3d 323, 328–29 (7th Cir. 1997)).

There is no dispute that the first two elements are satisfied here—Officer Williams was lawfully present in McGill's house, and the unmonitored phone was in plain view. The only issue, then, is whether the phone's incriminating nature was immediately apparent.

The incriminating nature of an item is "immediately apparent" if an officer has "probable cause to believe that the item is contraband or otherwise linked to criminal activity." *United States v. Cellitti*, 387 F.3d 618, 624 (7th Cir. 2004) (citing *Bruce*, 109 F.3d at 328). With a probationer like McGill, that criminal activity can include a violation of his conditions of supervised release. *See United States v. Herndon*, 501 F.3d 683, 689 (6th Cir. 2007); 18 U.S.C. § 3583(h) (allowing a court to revoke a defendant's term of supervised release and impose a term of imprisonment). Even "an ordinarily innocuous object" may be seized under this doctrine "when the context of an investigation casts that item in a suspicious light." *Cellitti*, 387 F.3d at 624.

Although the district court determined "that the unmonitored cell phone was not in and of itself a violation of McGill's conditions of supervised release," it found that the incriminating nature of the phone was immediately apparent to Officer Williams under the circumstances. We agree.

The circumstances of the seizure were as follows: McGill's supervised-release conditions prohibited him from having contact with minors or possessing any sexually stimulating materials, including on a cell phone. At the time of the home visit, Officer Williams knew that McGill had previously violated the terms of his release by viewing child pornography on a cell phone and that he had failed two polygraph tests regarding his compliance with his supervised-release conditions. Officer Williams testified that he observed a cell phone that he believed was capable of connecting to the internet and that might relate to the failed polygraphs. He further testified that McGill attempted to hide the phone from his view and changed his demeanor when asked about the phone. McGill's

odd explanation for having the phone—to charge an extra battery—further increased Officer Williams's suspicion, particularly because it didn't make sense to keep the phone in a case if its only purpose was charging a battery. Finally, Officer Williams was able to power on the phone, contrary to McGill's story, and observed a photo of a young boy on the phone's wallpaper.

Although McGill denied that he acted nervously or tried to block Officer Williams's view of the phone, the district court gave little weight to his version of events set out in his affidavit and gave great weight to Officer Williams's testimony at the hearing. Our review of the evidence does not "leave[] us with the definite and firm conviction" that the district court erred in its credibility assessment. *Love*, 706 F.3d at 842. So we accept its findings of fact.

Based on the above facts, Officer Williams had probable cause to believe that the unmonitored cell phone was linked to a violation of McGill's supervised-release conditions and thus the phone's incriminating nature was "immediately apparent. *See Raney*, 342 F.3d at 559; *Cellitti*, 387 F.3d at 624. Because the incriminating nature of the phone was immediately apparent, Officer Williams's seizure was lawful under the plain-view doctrine, and the evidence that stemmed from that seizure need not be suppressed.

### 2. *Reasonable Suspicion*

"Inherent in the very nature of probation is that probationers 'do not enjoy "the absolute liberty to which every citizen is entitled."'" *Knights*, 534 U.S. at 119 (quoting *Griffin*, 483 U.S. at 874). Along those lines, the Supreme Court has explained that there are several considerations unique to probationers

that inform what is reasonable under the Fourth Amendment, including that a "probationer 'is more likely than the ordinary citizen to violate the law,'" *id.* at 120 (quoting *Griffin*, 483 U.S. at 880), and that "probationers have even more of an incentive to conceal their criminal activities and quickly dispose of incriminating evidence than the ordinary criminal," *id.* So although a warrantless seizure ordinarily requires probable cause, "the balance of these considerations requires no more than reasonable suspicion" in cases involving a probationer. *Id.* at 121.

Reasonable suspicion is "more than a hunch but less than probable cause." *United States v. Wilson*, 963 F.3d 701, 703 (7th Cir. 2020). It requires "a particularized and objective basis" for suspecting that a person is breaking the law, *United States v. Rodriguez-Escalera*, 884 F.3d 661, 668 (7th Cir. 2018), and it "must be based on commonsense judgments and inferences about human behavior," *United States v. Eymann*, 962 F.3d 273, 282 (7th Cir. 2020) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000)).

For the same reasons laid out in the previous section, Officer Williams had reasonable suspicion to believe that McGill was in violation of his conditions of supervised release and that the cell phone was evidence of that violation or other criminal act. Officer Williams observed an unknown, unmonitored phone that appeared to be capable of connecting to the internet. He knew that McGill had failed polygraph tests regarding his compliance with his terms of supervised release, and he observed McGill's suspicious behavior upon noticing the unmonitored phone. And Officer Williams—an experienced probation officer with training in monitoring sex offenders on supervised release—had been monitoring McGill

for some time before this incident. Taken together, these circumstances provided Officer Williams with reasonable suspicion to seize the phone as evidence of a supervised-release violation or crime. Suppression, therefore, is not warranted.

*B. Even If the Phone Was Illegally Seized, the Evidence Need Not Be Excluded*

Even if we assume that the seizure was not supported by the above doctrines, the evidence still need not be suppressed in this case. True, when the government obtains evidence in violation of an individual's Fourth Amendment rights, the remedy is generally the exclusion of that evidence—and evidence that is the fruit of the illegal search or seizure—at trial. *Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016). But this rule does not apply automatically. Rather, it applies "only … where its deterrence benefits outweigh its substantial social costs," and certain exceptions to the rule have arisen accordingly. *Id.* at 2061 (quoting *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)). One such exception is when the evidence inevitably would have been discovered. Another exception is when the officer acted in good faith.

*1. Inevitable Discovery*

Under the inevitable-discovery doctrine, "illegally seized evidence need not be suppressed if the government can prove by a preponderance of the evidence that the evidence inevitably would have been discovered by lawful means." *United States v. Pelletier*, 700 F.3d 1109, 1116 (7th Cir. 2012) (citing *Nix v. Williams*, 467 U.S. 431, 442–44 (1984)).

Officer Williams's observations in McGill's home and McGill's statement that the phone contained evidence of child pornography were sufficient justification for the government

to obtain a warrant to seize the phone. *See id.* at 1117 ("It is unreasonable to think that, after [the defendant] admitted to two FBI agents that he had child pornography, the FBI would have failed to follow up and obtain a search warrant."). Indeed, Officer Williams testified that, based on this information, he filed a violation report and requested a search warrant, bench warrant, and detention hearing in McGill's underlying case. Thus, the discovery of the evidence was inevitable and need not be suppressed.

### 2. *Good Faith*

Finally, the exclusionary rule does not apply here because Officer Williams acted in good faith when he seized the cell phone. As noted above, the exclusionary rule does not apply automatically when an individual's Fourth Amendment rights are violated. *Strieff*, 136 S. Ct. at 2061. Rather, the exclusionary rule applies where "[t]he benefits of deterrence … outweigh the costs." *Herring v. United States*, 555 U.S. 135, 141 (2009) (citing *United States v. Leon*, 468 U.S. 897, 909 (1984)). When law enforcement acts "with an objectively reasonable good-faith belief that their conduct is lawful … the deterrence rationale loses much of its force," and the exclusionary rule does not apply. *Davis v. United States*, 564 U.S. 229, 238 (2011).

Officer Williams testified that he believed that the unmonitored phone violated McGill's conditions of supervised release and that it would also impede his ability to keep McGill in compliance. The district court found Officer Williams's testimony credible, and we see no basis for concluding that its finding was clearly erroneous. Because Officer Williams acted with objective good faith in seizing the cell phone, the evidence need not be excluded.

### III. CONCLUSION

For the foregoing reasons, we affirm the denial of McGill's motion to suppress.