NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 1, 2022
Decided May 2, 2022

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 21-2331

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 20-cr-78-wmc |
| ALAN J. LIPHART, *Defendant-Appellant*. | William M. Conley, *Judge*. |

## O R D E R

Alan Liphart, who pled guilty to receiving child pornography in violation of 18 U.S.C. § 2252(a)(2), appeals the denial of his motion to suppress incriminating files recovered from his smartphone. Liphart argues that his Fourth Amendment rights were violated when a police officer seized his phone without a warrant while arresting him for violating his terms of extended supervision. But we agree with the district court that this warrantless seizure was permissible because the officer reasonably suspected a link between the smartphone and a violation of Liphart's terms of extended supervision. We thus affirm Liphart's conviction.

In March 2020, Alan Liphart, a registered sex offender, was released from a Wisconsin prison to extended supervision, which is that state's equivalent of parole. *See United States v. Caya*, 956 F.3d 498, 500 (7th Cir. 2020). Among the conditions of Liphart's supervision were that he wear an ankle bracelet to monitor his location, that he adhere to a curfew, and—most salient to this appeal—that he not access or attempt to access the internet without prior approval from his supervising parole agent.

In May 2020, the Wisconsin Department of Corrections issued a warrant for Liphart's arrest because his ankle monitor indicated that he had violated a condition of his release. Officer Riley Schmidt was assigned to execute that warrant. In preparing to do so, Officer Schmidt reviewed Liphart's conditions of release in a law-enforcement computer system that records any changes to an offender's conditions. He saw no such adjustments, and in particular he saw no indication that Liphart had received permission to access the internet.

Officer Schmidt went to Liphart's apartment to carry out the arrest. When Liphart opened the door, Officer Schmidt explained that a warrant had been issued because of a location monitoring problem and that Liphart would need to go to jail for the day. Liphart, for his part, insisted that he had returned home on time and would call the monitoring center to clear up the problem. He then took a flip phone out of his pocket and called the monitoring center, but he failed to convince the agent who answered that he should not go to jail. After Liphart hung up, Officer Schmidt followed him into the apartment's living room.

Once inside, Officer Schmidt noticed a smartphone on Liphart's bedside table, visible through the open bedroom door. Believing, mistakenly, that Liphart's conditions of release prohibited smartphone possession, Officer Schmidt asked, "Are you allowed to have cell phones?" Liphart showed him the flip phone that he had just used to call the monitoring center. Officer Schmidt then pointed at the smartphone on the bedside table and asked, "What's that one?" Liphart replied, "That one's not—that don't even work anymore" and started walking toward the front door. Officer Schmidt said, "Well, let's go grab that real quick." Liphart then retrieved the smartphone from the bedroom and handed it to Officer Schmidt. The screen, which was apparently not locked, turned on automatically at Officer Schmidt's touch, revealing several online dating apps. At this point, Officer Schmidt pocketed the phone. He later obtained a search warrant for the phone and recovered files that led to Liphart's indictment for receiving and possessing child pornography. *See* 18 U.S.C. § 2252(a)(2), (a)(4)(B).

Liphart moved to suppress the recovered files, arguing that Officer Schmidt's seizure of his phone violated his Fourth Amendment rights. In Liphart's view, Officer Schmidt lacked reasonable suspicion—necessary to justify the warrantless seizure—that his phone was connected to a violation of Liphart's terms of supervision. Liphart conditionally pled guilty to receiving child pornography, 18 U.S.C. § 2252(a)(2), reserving the right to withdraw his plea if the court suppressed the images.

At a suppression hearing before a magistrate judge, Officer Schmidt testified as to his suspicions regarding Liphart's phone. He was struck by Liphart's possession of two phones—a "red flag," in his view, because most people have only one—and by Liphart's statement that the smartphone did not work, which Officer Schmidt deemed a "defensive" reaction.

Officer Schmidt also testified about a mistake in his written report of the arrest. The report stated incorrectly that Liphart's conditions of release prohibited him from possessing a smartphone. But, as Officer Schmidt acknowledged at the hearing, Liphart's conditions only forbade accessing the internet without prior approval from his parole agent. Still, with no approval noted in the computer system that tracks offenders' conditions, Officer Schmidt surmised that Liphart had received none.

The magistrate judge recommended denying the motion to suppress for three independent reasons: (1) Liphart consented to hand over the phone; (2) Officer Schmidt had reasonable suspicion to seize it; and (3) suppression was unnecessary because Officer Schmidt acted in good faith.

Over Liphart's objection, the district judge adopted the magistrate judge's report and recommendation and denied the motion to suppress. First, although the issue of consent was "close," the judge concluded—after viewing footage of the arrest from Officer Schmidt's body camera—that Liphart handed over the phone voluntarily. Second, even assuming that Officer Schmidt seized the smartphone without Liphart's consent, the judge explained that the seizure was still constitutional because Wisconsin law authorized searches of supervisees based only on reasonable suspicion, and Officer Schmidt reasonably suspected that Liphart was using the smartphone to access the internet without permission. Third, even assuming that there was a Fourth Amendment violation, the judge deemed suppression unnecessary because Officer Schmidt acted in good faith despite his mistaken but "entirely understandable" belief that Liphart was not permitted to have a smartphone.

Liphart now challenges each of the court's grounds for denying the motion to suppress, but we need consider only one in resolving this appeal—specifically, whether the seizure was supported by reasonable suspicion. Wisconsin Act 79 authorizes warrantless seizures of a supervisee's property if there is reasonable suspicion that the seized item is connected to a supervision violation. Wis. Stat. Ann. § 302.113(7r); *Caya*, 956 F.3d at 503 (upholding Act 79 against a Fourth Amendment challenge). Reasonable suspicion requires "more than a hunch but less than probable cause." *United States v. McGill*, 8 F.4th 617, 623 (7th Cir. 2021) (internal quotations omitted). Based on "commonsense judgments and inferences about human behavior," the officer must have a "particularized and objective basis" for suspecting wrongdoing. *Id.* (internal quotations omitted).

Liphart argues that Officer Schmidt had no reason to suspect a supervision violation because his conditions of release did not forbid him from possessing a smartphone. And, in his view, phones and "smart" devices are so ubiquitous in modern life that having two of them is unremarkable.

We agree with the district judge that Officer Schmidt had reasonable suspicion to seize the smartphone. True, Officer Schmidt mistakenly believed that Liphart's mere possession of the phone violated his conditions of release. But Officer Schmidt's motivation is irrelevant because the reasonable suspicion standard is objective. *United States v. Jackson*, 962 F.3d 353, 358 (7th Cir. 2020). And several facts together gave Officer Schmidt a "particularized and objective basis," *McGill*, 8 F.4th at 623 (internal quotations omitted), to suspect that Liphart was using the phone to violate the prohibition on unauthorized internet access: (1) Liphart did not need the smartphone to make calls (he had the flip phone for that); (2) it is common knowledge that smartphones usually connect to the internet; (3) Liphart grew "defensive" when questioned about the smartphone; (4) Liphart insisted that the smartphone did not work, raising questions as to why he kept it on his bedside table; and (5) the computer system that tracked changes in offenders' conditions of release gave no indication that Liphart had permission to use the internet.

Liphart attempts to distinguish his case from *McGill*, 8 F.4th 617, in which we upheld a probation officer's warrantless seizure of a probationer's smartphone in similar circumstances. As he points out, some of the facts that justified the seizure in *McGill* are absent here; in particular the *McGill* defendant, unlike Liphart, had a history of using a smartphone to violate his conditions of release and had failed lie detector tests regarding his compliance. *Id.* at 622. But the similarities are as important as the

differences. Like Liphart, the *McGill* defendant: (1) possessed two cell phones, both of which were observed in plain sight; (2) insisted when asked that his second phone did not work; and (3) exhibited a change in demeanor when asked about the second phone. *Id.* at 620, 622–23. What's more, we ruled in *McGill* that both reasonable suspicion *and probable cause* supported the seizure. *Id.* at 622–23. That being so, we have little difficulty concluding that the seizure in this case satisfied at least the lower standard of reasonable suspicion.

AFFIRMED