**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued May 19, 2022
Decided June 13, 2022

**Before**

JOEL M. FLAUM, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 21-2973

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Southern District of Indiana. |
| *v.* | No. 4:19-cr-00023 |
| AARON OVERTON, *Defendant-Appellant* | Sarah Evans Barker, *Judge*. |

**O R D E R**

In August 2019 police officers in Jeffersonville, Indiana attempted to stop Aaron Overton—who they suspected of drug dealing and triple homicide—for a traffic violation. Overton did not immediately pull over and kept driving away from the police. He eventually stopped and was arrested for resisting arrest. A drug-sniffing dog circled the perimeter of Overton's car and alerted, leading the police to search the car and find a gun. The district court denied a motion to suppress the gun. Overton pled guilty to possessing a gun as a felon, and the district court sentenced him to 92 months' imprisonment. Seeing no error in the district court's Fourth Amendment ruling or sentence, we affirm.

# I

## A

Shortly after 7:00 p.m. on August 8, 2019, officers from the Jeffersonville Police Department were surveilling Overton. Upon seeing Overton turn without signaling, Officer Thomas O'Neil attempted a traffic stop. But Overton did not stop in response to the police lights and sirens. He instead drove away into oncoming traffic. Officer O'Neil radioed for assistance and other officers blocked the road ahead of Overton, forcing him to stop.

Seconds after the car stop, Sergeant Denver Leverett arrived with a drug-sniffing dog named Flex. Leverett ordered Overton to exit his vehicle. In stepping out, Overton left open the driver's-side door. Leverett and O'Neil placed Overton under arrest for resisting law enforcement by failing to stop when signaled to do so. Overton did not have a valid driver's license and his car obstructed traffic, so the officers planned to impound and search the vehicle pursuant to department policies.

Within two or three minutes of the arrest, Sergeant Leverett directed the dog to circle and sniff Overton's car. As the dog approached the closed front passenger door, he sat on the ground, an alert for the smell of drugs. The dog then walked to the open driver's-side door and spontaneously jumped into the car. Once inside, the dog alerted twice more—first near the center console and a second time to a cell phone on the driver's seat. The police then searched the car. They did not find drugs but located a loaded pistol in the center console.

A federal gun charge then followed. See 18 U.S.C. § 922(g)(1).

## B

Overton moved to suppress the gun uncovered during the search of his car, contending both that the traffic stop was unlawfully prolonged to give the dog time to sniff and that the dog impermissibly entered the vehicle. The district court denied the motion without an evidentiary hearing, determining that "Mr. Overton has not raised a non-conjectural dispute as to any material facts."

The district court concluded that the police did not prolong the stop, as Sergeant Leverett ordered the dog sniff within two or three minutes of Overton's arrest. And Overton, the district court emphasized, had identified "no evidence of an alternate timeframe to counter or undermine Sgt. Leverett's account." The district court similarly

found that the dog's jumping into the car was spontaneous and consequently not an impermissible search.

Overton then entered a conditional guilty plea, preserving his right to appeal the denial of his motion to suppress. At sentencing, Overton objected to the Guidelines calculation in the Presentence Investigation Report, arguing that there was impermissible double counting because a conviction for robbery committed when he was 17, but for which he was tried as an adult, increased both his criminal history category and offense level under the Guidelines. The district court disagreed, explaining that "[t]he law is pretty well established with respect to permitting the use of a conviction to establish the base offense level as well as the defendant's criminal history." And the Sentencing Commission, the district court added, provided no exception for adult convictions committed while the defendant was a juvenile. After considering the 18 U.S.C. § 3553(a) factors, the district court sentenced Overton to 92 months' imprisonment, the low end of the advisory range.

Overton then appealed.

**II**

A

Settled law defeats Overton's Fourth Amendment challenge to the police's search of his car. "Under the inevitable discovery doctrine, illegally seized evidence need not be suppressed if the government can prove by a preponderance of the evidence that the evidence inevitably would have been discovered by lawful means." *United States v. McGill*, 8 F.4th 617, 624 (7th Cir. 2021) (internal quotations omitted). The government has met this burden.

Overton's gun would have been inevitably discovered during an inventory search after his car was impounded. "An inventory search is lawful if (1) the individual whose possession is to be searched has been lawfully arrested, and (2) the search is conducted as part of the routine procedure incident to incarcerating an arrested person and in accordance with established inventory procedures." *United States v. Cartwright*, 630 F.3d 610, 613 (7th Cir. 2010). Both prongs are satisfied here. Overton was lawfully arrested for resisting arrest. And the police conducted the search pursuant to the Jeffersonville Police Department's established procedures, which provide for the impoundment and search of vehicles that obstruct traffic following the arrest of a driver.

The uncontroverted statements of the arresting officers indicate that Overton's car presented a traffic hazard. Sergeant Leverett observed that Overton's car "was positioned in a manner to obstruct traffic and was in peril." Officer O'Neil included in his report that "the vehicle was a roadway hazard blocking the northbound lane of travel." Even more, Overton did not have a valid driver's license, so he could not legally drive the car away from the scene.

Because the vehicle would be impounded under the Jeffersonville Police Department's policies, it would have also been subject to an inventory search at the station house. The gun would have therefore been inevitably discovered. See *Cartwright*, 630 F.3d at 615–16 (affirming application of inherent discovery doctrine for vehicle towed pursuant to a "sufficiently standardized" police policy). We can stop here. We do not need to consider whether the stop was unlawfully prolonged or if the dog's spontaneous jump into the car somehow violated Overton's Fourth Amendment rights.

Because all material facts are undisputed, the district court did not abuse its discretion in declining to hold a hearing on Overton's suppression motion. See *United States v. Curlin*, 638 F.3d 562, 564 (7th Cir. 2011) ("District courts are required to conduct evidentiary hearings only when a substantial claim is presented and there are disputed issues of material fact that will affect the outcome of the motion.").

B

Finally, Overton renews his argument that "the district court [at sentencing] double counted his robbery conviction for an offense which occurred while he was a juvenile [at age 17]." The district court determined that this conviction warranted the assignment of three points to Overton's criminal history calculation and a four-level increase in his base offense level from 22 to 26 under U.S.S.G. § 2K2.1(a)(1)—the career offender Guideline.

There was no Guidelines error. To the contrary, the district court applied the Guidelines as written. "[D]ouble counting is generally permissible unless the text of the guidelines expressly prohibits it." *United States v. Vizcarra*, 668 F.3d 516, 519 (7th Cir. 2012). The double counting here was not expressly prohibited—rather, it is expressly directed by the Guidelines. "Prior felony conviction(s) resulting in an increased base offense level under subsection (a)(1) . . . are also counted for purposes of determining criminal history points pursuant to Chapter Four, Part A (Criminal History)." U.S.S.G. § 2K2.1, cmt. n.10. This is true even if the conviction is for an offense committed when the defendant is younger than 18, so long as the conviction "is classified as an adult

conviction under the laws of the jurisdiction in which the defendant was convicted." U.S.S.G. § 2K2.1, cmt. n.1.

For these reasons, we AFFIRM.