In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 22-2659

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROLAND BLACK,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:18-cr-00149-3 — **Sharon Johnson Coleman**, *Judge.*

_____

ARGUED FEBRUARY 21, 2024 — DECIDED JUNE 20, 2024

_____

Before EASTERBROOK, BRENNAN, and KIRSCH, *Circuit Judges.*

KIRSCH, *Circuit Judge.* Law enforcement officers intercepted a package mailed from Atlanta to a Chicago residence because they believed it contained narcotics. Pursuant to a warrant, officers then searched the package and found a substance containing furanyl fentanyl. They switched the fentanyl with sham narcotics covered in a fluorescent powder, wired the package to signal to them when it was opened, and

sent an undercover officer to deliver the package to the Chicago residence. A woman claiming to be the intended recipient took the package, and Roland Black arrived shortly thereafter. Once the officers received a signal that the package had been opened, they approached the front door. The package was then thrown out of the back of the building, and Black fled to the top floor, where he was arrested and found with the luminescent powder from the sham narcotics on his hands.

A jury found Black guilty of attempting to possess with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. Black appealed, raising four arguments: (1) the officers did not have reasonable suspicion to seize the package, and the district court should have held an evidentiary hearing to resolve related factual disputes; (2) the jury instruction about his requisite mens rea was erroneous; (3) the jury's verdict was not supported by sufficient evidence; and, solely for preservation purposes, (4) the court erred in denying his motion to dismiss based on the court's treatment of furanyl fentanyl as an analogue of fentanyl. Because we find that officers had reasonable suspicion to seize the package (and the court did not abuse its discretion in denying an evidentiary hearing), the challenged jury instruction accurately stated the law, the jury's verdict is supported by more than sufficient evidence, and, as Black acknowledges, his motion to dismiss argument is foreclosed by our precedent, we affirm.

I

In February 2017, law enforcement officers began listening to recorded jail phone calls of Millard Williams—a Georgia inmate with a known criminal history. Specifically, officers

were aware that Williams had multiple prior convictions for possession of a controlled substance, officers had previously made three controlled mail deliveries of MDMA to addresses associated with Williams, and Williams had escaped from state custody and fled a charge of possession of a controlled substance with intent to distribute in Illinois. Williams was eventually arrested at his apartment in Georgia, where officers recovered heroin, cocaine, marijuana, MDMA, and several opioids.

During one of Williams's recorded jail calls, he spoke with Roland Black, and Black told Williams to "put that other situation back in effect." The next day, Black searched the internet for "[l]atest drug bust, Chicago" and "fentanyl." During another phone call the week after, Williams told Black that "there's one calvary on hold … right now," and Black responded that his "homie" was "ready." Williams then told Black that "he have to grab it from Maria." That same day, Black searched "carfentanyl," "fentanyl HCL," and "fentanyl HCL powder" on his iPhone and accessed articles entitled "opioids, pure fentanyl HCL, how much cut and how to do it" and "fentanyl HCL powder manufacturers, exporters, suppliers."

The next day, Willie Alexander—another individual with whom Williams had spoken—shipped a package from Atlanta (that had originated in Hong Kong) to Maria Gonzalez at North Springfield Avenue in Chicago. The package was scheduled for delivery the following day, March 3. On the expected delivery date, another individual, Michelle Jamison, texted Black to "be on point before 10:30." But the package was not delivered as scheduled. Seemingly worried about the failed delivery, Black frequently visited the U.S. Postal Service

website and tracked the package around 130 times. Five days after the scheduled delivery, Black told Williams that the situation was "going south," and Williams told Black that "unless that shit get returned to sender … [a] motherfucker have to split that in half or something." Black also stated that his "homie" was "trying to figure out what the fuck was going on." Black then searched "latest drug bust Chicago" on his iPhone and, the next day, searched "man caught with package at post office."

Meanwhile, suspecting that the package contained narcotics in light of Williams's suspicious phone conversations and known criminal history (including his prior use of the mail to ship narcotics), a law enforcement officer asked a postal inspector on March 6 to check for packages addressed to North Springfield Avenue in Chicago. The officer was aware of the package's intended destination from an earlier phone call in which Williams provided Alexander with the Springfield Avenue address. The postal inspector located and seized the package on March 6, and officers took possession of it on March 7 from the international mail center in Chicago. According to a law enforcement database, neither the purported sender nor recipient was associated with the respective addresses listed on the package. Pursuant to a warrant, officers then searched the package on March 7 and found an off-white granular substance later tested and confirmed to contain furanyl fentanyl, which had been scheduled as a controlled substance since November 2016. Law enforcement officers then replaced the narcotics with brown sugar covered in a fluorescent powder (to identify anyone who touched the sham narcotics) and wired the package to alert them when it was opened.

On March 9, an officer disguised as a mail carrier delivered the package to its designated destination. A woman claiming to be Maria Gonzalez—later identified as Janet Vasquez—took the package from the officer. Soon after, Black arrived at the residence and went inside. About two minutes later, officers were alerted that the package had been opened and moved toward the front door. Less than a minute later, the package was tossed out of the rear of the building. An officer, who was positioned in the alley behind the building, observed Black flee to the top floor residence, where he was eventually arrested and found with the luminescent powder on his hands.

A grand jury charged Black with attempting to possess with intent to distribute a controlled substance—100 grams or more of a mixture containing furanyl fentanyl (an analogue of fentanyl listed as a Schedule I controlled substance, see 21 C.F.R. § 1308.11(46))—in violation of 21 U.S.C. §§ 841(a)(1) and 846. Before trial, Black moved to dismiss the indictment based on the identification of furanyl fentanyl as an analogue of fentanyl, which the district court denied. He also moved to suppress all evidence derived from the seizure of the package, arguing that the officers seized it without reasonable suspicion. He requested an evidentiary hearing to resolve the motion. The district court denied Black's motion without a hearing, reasoning that the totality of the circumstances supported the officers' reasonable suspicion determination. Black's case then proceeded to trial. Close to its conclusion, the government proposed the following instruction on Black's requisite mens rea: "[T]he government must prove … beyond a reasonable doubt: … The defendant Roland Black believed that the substance was some kind of a controlled substance. The government is not required to prove that the defendant knew the

substance was actually a controlled substance." The court allowed this instruction over Black's objection, and the jury found Black guilty.

On appeal, Black argues that the court erred in denying his motion to suppress all evidence derived from the seizure of the package without holding a hearing; challenges the jury instruction regarding his requisite mens rea; argues that the jury's verdict is not supported by sufficient evidence; and, solely for purposes of preservation, claims that the district court erred in denying his pretrial motion to dismiss based on treating furanyl fentanyl as an analogue of fentanyl. We address each claim in turn.

II

Black first challenges the district court's denial of his motion to suppress all evidence derived from the seizure of the package. Law enforcement officers "may detain [a] package for a reasonable length of time while investigating" it if there is "reasonable suspicion that the package contains contraband." *United States v. Ganser*, 315 F.3d 839, 843 (7th Cir. 2003) (quotation omitted). "Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Navarette v. California*, 572 U.S. 393, 397 (2014) (cleaned up). While we review the district court's reasonable suspicion determination de novo, we continue to review its findings of fact for clear error. *United States v. Dennis*, 115 F.3d 524, 532 (7th Cir. 1997).

Based on "the totality of the circumstances," *Navarette*, 572 U.S. at 397 (quotation omitted), we agree with the district

court's determination that the officers had reasonable suspicion to seize the package. To begin, they knew of Williams's criminal history, including at least three prior convictions for possessing a controlled substance. Officers were also aware of at least three parcels containing MDMA that were shipped to addresses associated with Williams. And after fleeing an arrest warrant in Illinois for a drug possession charge, Williams was arrested at his apartment in Georgia, where officers discovered heroin, cocaine, marijuana, MDMA, and opioids. Following his arrest, officers began monitoring Williams's phone calls, where he used code terms when communicating with Black—such as noting that "there's one calvary on hold." Williams also told Black that "he have to grab it from Maria," and the next day, an individual associated with Williams shipped a package from Atlanta to Maria Gonzalez at North Springfield Avenue in Chicago. We agree that Williams's known history of drug possession and sending controlled substances in the mail, in addition to suspicious circumstances surrounding the package addressed to Maria Gonzalez, gave the officers reasonable suspicion that the package contained contraband.

We next turn to the duration of the seizure of the package. *Dennis*, 115 F.3d at 533 ("[W]e also must determine whether the inspector detained the package for an unreasonably long period of time before obtaining a search warrant."). The package was detained for around one day before the officers obtained a search warrant, which we find to be "a reasonable length of time." *Ganser*, 315 F.3d at 843 (quotation omitted); see *id.* at 844 (finding a four-day delay "not constitutionally unreasonable"); *United States v. Mayomi*, 873 F.2d 1049, 1054 (7th Cir. 1989) (concluding that a two-day detention of letters did not violate the defendant's Fourth Amendment rights).

Black further challenges the district court's denial of his request for an evidentiary hearing, which we review for an abuse of discretion. *United States v. Edgeworth*, 889 F.3d 350, 353 (7th Cir. 2018). "An abuse of discretion is found only where no reasonable person would agree with the decision made by the trial court." *United States v. Thomas*, 453 F.3d 838, 845 (7th Cir. 2006). Black argues that an evidentiary hearing was necessary to resolve whether law enforcement officers knew that the package had originated in Hong Kong prior to detaining it. He also asserts that the postal inspector's awareness that the package's purported sender and recipient were not associated with the respective addresses before detaining it is a disputed fact that warrants a hearing. But, even if Black is correct that these two facts are disputed, the undisputed material facts outlined above supported the district court's ruling on Black's motion to suppress, making an evidentiary hearing unnecessary. Thus, under our highly deferential standard of review, and given that "evidentiary hearings are not required as a matter of course," *Edgeworth*, 889 F.3d at 353 (cleaned up), we agree with the district court that there are no disputed issues of material fact that would impact the outcome of the motion to suppress.

## III

Black contests the jury instruction regarding his mens rea, which we review de novo to decide "whether, taken as a whole, [the instruction] correctly and completely informed the jury of the applicable law." *Huff v. Sheahan*, 493 F.3d 893, 899 (7th Cir. 2007).

The jury found Black guilty of violating 21 U.S.C. § 841(a)(1), which makes it unlawful to knowingly or intentionally possess with intent to distribute a controlled

substance. The Supreme Court has held that § 841(a)(1)'s knowledge requirement "applies not just to the statute's verbs but also to the object of those verbs—'*a* controlled substance.'" *McFadden v. United States*, 576 U.S. 186, 191 (2015) (emphasis in original). The statute's knowledge requirement can be met in two ways: (1) "by showing that the defendant knew he possessed a substance listed on the schedules, even if he did not know which substance it was"; (2) "by showing that the defendant knew the identity of the substance he possessed" even if he "does not know that [the substance] is listed on the schedules." *Id.* at 192. Section 846 imposes liability on a person who, as Black did, attempts to violate § 841(a)(1), even if the attempt fails. In that case, the defendant is guilty if he "subjectively believes" that he is in possession of a controlled substance, even if he is duped into possessing a fake substance. *United States v. Dominguez*, 992 F.2d 678, 682 (7th Cir. 1993).

We find that the challenged jury instruction accurately captured the law. The sentence—"The defendant Roland Black believed that the substance was some kind of a controlled substance"—reflects the first example set out in *McFadden* where the defendant is guilty if he knows (or, in cases of attempt, subjectively believes) that he is in possession of a substance listed on the schedules as a controlled substance. 576 U.S. at 192. This sentence also mirrors the Seventh Circuit Pattern Instructions for sham narcotics cases. Seventh Circuit Pattern Criminal Jury Instructions, at 1022 (2023) ("The sale of a non-controlled substance that the defendant subjectively believes to be a controlled substance can constitute an attempt to distribute."). "Pattern instructions are presumed to accurately state the law." *United States v. Freed*, 921 F.3d 716, 721 (7th Cir. 2019). Thus, the jury was accurately

instructed that Black is guilty if it finds that he "believed that the substance was some kind of a controlled substance."

Black largely challenges the second sentence, which states, "The government is not required to prove that the defendant knew the substance was actually a controlled substance." Black argues that the instruction relieved the government of its burden to prove his mens rea. But this argument is foreclosed by the second example in *McFadden* where, to reiterate, the Supreme Court clarified that § 841(a)(1)'s mens rea requirement may be satisfied even if the defendant does not know that the substance he possesses is in fact scheduled as a controlled substance, so long as he knows its identity. 576 U.S. at 192. That is because "ignorance of the law is typically no defense to criminal prosecution." *Id.* And the instruction is accurate to the extent it reaffirms that Black did not need to specifically know that the package contained furanyl fentanyl (rather than its actual contents, brown sugar) because "factual impossibility or mistake of fact is not a defense to an attempt charge." *United States v. Cote*, 504 F.3d 682, 687 (7th Cir. 2007).

## IV

Black also argues that the evidence was insufficient to prove that he believed the package contained a controlled substance, and thus the government failed to show that he acted with the requisite mens rea as set forth in *McFadden*. We review the evidence "to determine only whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, viewing the evidence in the light most favorable to the government." *United States v. Webster*, 775 F.3d 897, 904–05 (7th Cir. 2015). "We have frequently described this standard as 'nearly insurmountable.'" *United*

*States v. Leal*, 72 F.4th 262, 267 (7th Cir. 2023) (quotation omitted). Black cannot meet this exceedingly high standard.

There was more than sufficient evidence that Black believed that the package contained a controlled substance (or that it contained furanyl fentanyl). To begin, Black searched for "Latest drug bust, Chicago," "fentanyl," "carfentanyl," "fentanyl HCL," "fentanyl HCL powder," and "man caught with package at post office." He also accessed articles entitled "opioids, pure fentanyl HCL, how much cut and how to do it" and "fentanyl HCL powder manufacturers, exporters, suppliers." Further, jurors heard recorded jail phone calls between Black and Williams, where Black asked Williams to "put that other situation back in effect," Williams told Black that "there's one calvary on hold … right now," and Black responded that his "homie" was "ready." Then the day after Williams told Black that "he have to grab it from Maria," an individual associated with Williams shipped a package from Atlanta to Maria Gonzalez in Chicago. On the package's scheduled delivery date, Black was told to "be on point before 10:30." But the package was not delivered on time, and Black persistently tracked it (around 130 times) and called Williams to tell him that the situation was "going south," to which Williams responded that "unless that shit get returned to sender … [a] motherfucker have to split that in half or something." Once the police arrived at the residence, someone threw the package containing the sham narcotics out of the back of the building, and Black absconded to the top floor, where he was found with luminescent powder from the sham narcotics on his hands.

In sum, Black's conversations with Williams, internet searches, and actions all supported the conclusion that he

believed the package contained a controlled substance. We have no trouble concluding that the evidence is more than sufficient for a rational juror to find that Black attempted to possess with intent to distribute a controlled substance.

## V

Lastly, Black argues that the district court erred in denying his motion to dismiss (1) by rejecting his argument that "analogue" is unconstitutionally vague and (2) by treating furanyl fentanyl as an analogue of fentanyl. But he concedes that both arguments are foreclosed by *United States v. Johnson*, 47 F.4th 535 (7th Cir. 2022), where we applied the plain meaning of analogue and held that furanyl fentanyl qualifies as an analogue of fentanyl. *Id.* at 541–43. Instead, as he admits in his opening brief, Black raises this issue solely for preservation purposes. Accordingly, we uphold the district court's denial of Black's motion to dismiss.

AFFIRMED