In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-2330

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOEL ROSARIO,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:15-cr-00611-3 — **John Z. Lee**, *Judge*.

ARGUED MAY 11, 2021 — DECIDED JULY 19, 2021

Before EASTERBROOK, RIPPLE, and KANNE, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Several individuals burglarized a store in Ann Arbor, Michigan, stealing firearms, collector coins, and other goods. Police officers obtained cell-site location information pursuant to the Stored Communications Act, 18 U.S.C. § 2701 et seq. That information led to the arrest of Joel Rosario.

Prior to trial, Mr. Rosario filed a motion to suppress the cell-site location information. He submitted that the Fourth Amendment required the Government to secure a search warrant before obtaining cell-site location information. Applying the law as it existed prior to *Carpenter v. United States*, 138 S. Ct. 2206 (2018), the district court denied the motion, holding that the acquisition of cell-site location information from third-party service providers did not constitute a Fourth Amendment search.

A jury found Mr. Rosario guilty of one count of transporting stolen goods in interstate commerce, in violation of 18 U.S.C. § 2314, and of one count of unlawful possession of a firearm by a felon, in violation of 18 U.S.C § 922(g)(1). Mr. Rosario filed a motion for a new trial, maintaining that the cell-site location information should have been suppressed because it was obtained without a warrant. While Mr. Rosario's motion was pending, the Supreme Court issued its decision in *Carpenter*, holding that the acquisition of cell-site location information constitutes a Fourth Amendment search for which law enforcement is generally required to obtain a warrant supported by probable cause. 138 S. Ct. at 2221. The district court nevertheless denied Mr. Rosario's new trial motion, as well as his subsequent motion to reconsider. Mr. Rosario timely appealed, and we now affirm the judgment of the district court.

**I**

**A.**

On December 5, 2013, several individuals burglarized a store in Ann Arbor, Michigan, after the store had closed. The burglars stole twenty-four firearms, collector coins, and other

goods with a combined value over $208,000. The store's owner told investigating officers that three men had entered the store approximately forty-five minutes prior to closing. The owner had spoken to one of the men about guns in a display case, while the other two browsed the store.

During the investigation, the officers discovered that a private caller, using the *67 code,[1] had placed multiple calls to the store shortly after it had closed for the day. The Stored Communications Act sets out two ways to obtain cell-site location information: (1) voluntary disclosure, or an "exigent request," under 18 U.S.C. § 2702(c);[2] or (2) required disclosure authorized by a court order, under 18 U.S.C. § 2703(d).[3] Here, the officers made an exigent request to Comcast, the store's telephone service provider, for the private caller's phone number. After Comcast voluntarily disclosed the number, the officers, using the Internet, determined that Sprint was that caller's provider. The officers then made an exigent request to

---

[1] Dialing *67 before placing a call blocks the recipient's caller ID from revealing the caller's phone number.

[2] Under 18 U.S.C. § 2702(c)(4), a service provider may divulge customer information "to a governmental entity, if the provider, in good faith, believes that an emergency involving danger or death or serious physical injury to any person requires disclosure without delay of information relating to the emergency."

[3] Under 18 U.S.C. § 2703(d), a court order for disclosure "may be issued by any court … only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation."

Sprint for the cell-site location information for that cell phone.

Cell-site location information is the location information generated by a cell phone. When the phone is powered on,[4] it sends and receives signals from the cell tower with the strongest signal; that cell tower is usually the one closest to the phone. Sprint voluntarily provided the requested cell-site location information, which indicated that on December 3 and 4, 2013, the phone had pinged off various cell towers in Illinois. At 9:26 p.m. on December 4, however, the phone had pinged off of a cell tower in Lansing, Michigan, and at 11:14 p.m., the phone pinged off of a cell tower in Ann Arbor, Michigan. The phone pinged off of cell towers in Ann Arbor until 6:37 p.m. on December 5. The phone then traveled back to Illinois. The officers surveyed hotels in the Ann Arbor area and discovered that the phone number had been provided to a Comfort Inn under Mr. Rosario's name.

Although the officers had obtained cell-site location information directly from Sprint, the officers and the Government later sought court orders for the same and more information. On December 9, 2013, the officers applied for and received a court order pursuant to § 2703(d) to obtain the store's phone records from Comcast. On December 13, 2013, the Government applied for and received another court order pursuant to § 2703(d) to obtain the cell-site location information for

---

[4] "[A] cell phone logs a cell-site record by dint of its operation, without any affirmative act on the part of the user beyond powering up. Virtually any activity on the phone generates [cell-site location information], including incoming calls, texts, or e-mails and countless other data connections that a phone automatically makes when checking for news, weather, or social media updates." *Carpenter v. United States*, 138 S. Ct. 2206, 2220 (2018).

Mr. Rosario's phone for the month of December 2013. In February 2017, the Government again sought and received the same information from Sprint in another § 2703(d) order.

**B.**

A grand jury indicted Mr. Rosario for transporting stolen goods in interstate commerce, in violation of 18 U.S.C. § 2314, and for unlawful possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). On December 4, 2016, Mr. Rosario filed a motion to suppress the cell-site location information evidence. He argued that the Government had obtained the cell-site location information in violation of his Fourth Amendment rights by failing to first obtain a warrant supported by probable cause. At the time the district court denied Mr. Rosario's motion to suppress, there was not yet any binding Fourth Amendment precedent regarding the propriety of acquiring cell-site location information from third-party service providers. Relying on *Smith v. Maryland*, 442 U.S. 735 (1979), and applying the third-party doctrine, the court concluded that Mr. Rosario did not have a reasonable expectation of privacy in the information he voluntarily had turned over to his cellular service provider through the use of his cell phone. The court accordingly denied Mr. Rosario's suppression motion. Mr. Rosario proceeded to trial, and the jury convicted him on both counts.

Two months after Mr. Rosario's trial, the Supreme Court issued its decision in *Carpenter*, 138 S. Ct. at 2206. The Court held that individuals do have a reasonable expectation of privacy in their cell-site location information and that police generally must obtain a warrant supported by probable cause prior to acquiring cell-site location information from a third-party service provider. The Court further held that

court orders obtained under § 2703(d) were insufficient. Showing by specific and articulable facts that there are "reasonable grounds" to believe that the information was "relevant and material to an ongoing investigation" is a lower standard than probable cause. *Id.* at 2221.

The district court nevertheless denied Mr. Rosario's motions to reconsider the motion to suppress and for acquittal; it also concluded that a new trial was not warranted. The court acknowledged that its earlier denial of Mr. Rosario's suppression motion rested on the pre-*Carpenter* view that obtaining cell-site location information was not a search. The court further acknowledged that *Carpenter* had "effectively overturned" that view.[5] The district court held, nevertheless, that a clear chain of probable cause would have led to the cell-site location information's inevitable discovery and that the officers had followed in good faith the requirements of the existing legal framework of the Stored Communications Act.

## II

### A.

Mr. Rosario appeals the district court's denial of his motion to suppress the cell-site location information evidence. He contends that the police seized the cell-site location information records without probable cause and that the records are therefore inadmissible against him. The district court erred, he maintains, in denying the motion to suppress and in denying him a new trial.

---

[5] R.254 at 6.

**1.**

The procedural and substantive standards that must govern our assessment of Mr. Rosario's submission are well established. In reviewing a district court's denial of a motion to suppress, "we review legal conclusions de novo but findings of fact for clear error." *United States v. Edgeworth*, 889 F.3d 350, 353 (7th Cir. 2018). We review a district court's ruling on a new trial motion for an abuse of discretion. *United States v. Friedman*, 971 F.3d 700, 713 (7th Cir. 2020). An error of law constitutes an abuse of discretion. *See United States v. Shelton*, 997 F.3d 749, 757 (7th Cir. 2021).

"The 'touchstone' of the Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.'" *United States v. Hammond*, 996 F.3d 374, 383 (7th Cir. 2021) (quoting *Henry v. Hulett*, 969 F.3d 769, 776–77 (7th Cir. 2020)). "If a defendant has the requisite expectation of privacy, the Fourth Amendment generally requires law enforcement to obtain a warrant before executing a search." *Id.* at 384. "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." *Id.* (quoting *Riley v. California*, 573 U.S. 373, 382 (2014)).

To "'compel respect for the constitutional guaranty' of freedom from unreasonable searches," the Supreme Court also has "fashioned the exclusionary rule." *Id.* (quoting *United States v. Martin*, 807 F.3d 842, 846 (7th Cir. 2015)). We have recently made clear, however, that

> the exclusionary rule is not a personal constitutional right, and its application exacts a heavy toll on both the judicial system and society at

large, as its effect often is to suppress the truth and set the criminal loose in the community without punishment. The exclusionary rule is designed primarily to deter unconstitutional conduct. The exclusionary rule therefore does not apply when law enforcement has relied in good faith on a facially valid warrant, a then-valid statute, or binding circuit precedent. Succinctly, suppression of evidence … has always been our last resort.

*Id.* (cleaned up).

To obtain Mr. Rosario's cell-site location information, officers relied on the procedures set forth in the Stored Communications Act, 18 U.S.C. § 2701 et seq. Section 2702 covers the "[v]oluntary disclosure of customer communications or records." Section 2702(c)(4) allows service providers to divulge customer information "to a governmental entity, if the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay of information relating to the emergency." Section 2703 covers the "[r]equired disclosure of customer communications or records." Section 2703(d) provides the requirements for a court order:

A court order for disclosure … shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation.

*Id.*

In 2018, however, the Supreme Court held in *Carpenter* that "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through [cell-site location information]." 138 S. Ct. at 2217. Accordingly, "the Government must generally obtain a warrant supported by probable cause before acquiring such records." *Id.* at 2221. The Supreme Court further held that the showing required to obtain a court order under § 2703(d) of the Stored Communications Act "[fell] well short of the probable cause required for a warrant." *Id.* "Consequently, an order issued under Section 2703(d) of the Act is not a permissible mechanism for accessing historical cell-site records." *Id.*

## 2.

Mr. Rosario now seeks to exclude his cell-site location information based on *Carpenter*'s holding. We addressed this issue in *United States v. Curtis*, 901 F.3d 846, 848 (7th Cir. 2018), and again in *United States v. Hammond*, 996 F.3d at 385–86.[6] In those cases, we made clear that a conceded error after *Carpenter* does not automatically require the application of the exclusionary rule where the Government relied in good faith on a statute later declared unconstitutional. *Curtis*, 901 F.3d at 848; *Hammond*, 996 F.3d at 385–86; *see also Illinois v. Krull*, 480 U.S. 340, 350 (1987) ("If the statute is subsequently declared

---

[6] Although the Supreme Court decided *Carpenter* after the Government requested and received Mr. Rosario's cell-site location information pursuant to §§ 2702(c)(4) and 2703(d) of the Stored Communications Act, *Carpenter* controls our analysis. *See United States v. Hammond*, 996 F.3d 374, 385 n.3 (7th Cir. 2021); *see also United States v. Maez*, 960 F.3d 949, 954 (7th Cir. 2020) ("Current law governs our review on direct appeal.").

unconstitutional, excluding evidence obtained pursuant to it prior to such a judicial declaration will not deter future Fourth Amendment violations by an officer who has simply fulfilled his responsibility to enforce the statute as written."). Here, the officers initially requested voluntary disclosures from Comcast and Sprint by invoking the exigent request procedures set out in § 2702(c)(4). Notably, local officers and the Government, a few days into the investigation, and then the Government again in 2017, sought and obtained § 2703(d) court orders authorizing access to cell-site location information for broader periods of time.

Mr. Rosario contends that, although "*Curtis* maps the course for this court's analysis," a different result is required.[7] Unlike in *Curtis*, he submits, the officers did not seek the § 2703(d) orders until *after* they had invoked § 2702(c)(4) of the Stored Communications Act, the voluntary exigent circumstances provision, and requested, obtained, and used Mr. Rosario's cell-site location information. When the officers invoked § 2702(c)(4), he submits, there were no exigent circumstances presented by the theft of firearms. In Mr. Rosario's view, "[w]ithout such imminent emergency, law enforcement could not legitimately obtain the [cell-site location information] under § 2702(c)(4)."[8] We therefore cannot say, he maintains, that the officers were acting in good-faith reliance on the provision.

We cannot accept Mr. Rosario's submission. In our view, the record demonstrates that the officers relied on § 2702(c)(4)

---

[7] Appellant's Br. 13.

[8] *Id.* at 16.

of the Stored Communications Act in good faith. The officers' emergency request form submitted to Comcast stated that "[a] total of 25 guns (22 handguns) [were] stolen," and that the "[v]olume of guns, in particular, the number of stolen handguns, pose[d] a significant community risk to life or serious physical harm if potential recovery of the guns is delayed."[9] Indeed, according to the police report, exigent requests were made to Sprint within thirty minutes of Comcast's providing the telephone number.[10]

To support his view that there was no exigency here, Mr. Rosario invites our attention to a number of cases that considered facts arguably more graphic and circumstances more immediate such as a burglary in process. However, the existence of scenarios involving greater exigencies does not render the facts before us non-exigent. The officers did not act unreasonably when they submitted to Comcast and Sprint, the entities tasked with deciding whether to release the information, that the volume of guns and the number of handguns stolen presented a significant threat to public safety. The record contains no information to support the view that the officers did anything other than attempt to stem the distribution of the weapons by quickly ascertaining their location.

**3.**

Another exception to the exclusionary rule, the inevitable discovery doctrine, also supports, independently, the district court's decision. "Under the inevitable discovery doctrine, the exclusionary rule is inapplicable where the government

---

[9] R.222-1 at 1.

[10] *See* R.95-2 at 3.

establishes by a preponderance of the evidence 'that the information ultimately or inevitably would have been discovered by lawful means.'" *United States v. Alexander*, 573 F.3d 465, 477 (7th Cir. 2009) (quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984)). To establish that officers inevitably would have discovered the challenged evidence by lawful means,

> the Government must demonstrate that two criteria are met: First, it must show that it had, or would have obtained, an independent, legal justification for conducting a search that would have led to the discovery of the evidence; second, the Government must demonstrate that it would have conducted a lawful search absent the challenged conduct.

*United States v. Marrocco*, 578 F.3d 627, 637–38 (7th Cir. 2009) (footnote omitted).

The district court properly concluded that the requirements of the inevitable discovery doctrine had been met. On the first prong, as the district court held, there was "a clear chain of probable cause, which would have supported warrants had the police applied for them."[11] The officers, after learning from the owner the timing of the call (after the store had closed and before the burglary) and that it was a private number, were justified in contacting Comcast to obtain the caller's phone number. Such a warrantless request is supported by *Smith v. Maryland*, 442 U.S. at 742, left undisturbed by *Carpenter*, 138 S. Ct. at 2220. Once the officers had that number, we agree that "they would have had probable cause

---

[11] R.254 at 8.

to seek [cell-site location information] for, at least, the night of the burglary, to determine if the caller was in the vicinity of the store."[12] If that search established, as it did, that the caller was in the vicinity of the store, "officers would have had probable cause to seek [cell-site location information] for the days immediately surrounding the burglary as well as the identity of the subscriber."[13] "This is not a case where the investigating officers learned new information during an illegal search and, based on that information, took investigatory steps that they would not have taken otherwise." *Marrocco*, 578 F.3d at 638.

Mr. Rosario attempts to cast doubt on the individual facts. He contends that "[b]usinesses often receive after-hours calls" or even robocalls, that having a phone number listed as private or blocked is not uncommon and perfectly lawful, and that the store received multiple calls from out-of-town area codes.[14] But evaluating whether there is probable cause requires looking at the totality of the circumstances. *See United States v. Rees*, 957 F.3d 761, 766 (7th Cir. 2020) ("It also depends on the totality of the circumstances—'the whole picture'—not each fact in isolation." (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018))). Here, the totality of the circumstances indicate that the officers would have had independent legal justification for searches that would have led to the discovery of Mr. Rosario's cell-site location information.

On the second prong of the inevitable discovery doctrine, the Government must show that the officers inevitably would

---

[12] *Id.* at 9.

[13] *Id.*

[14] Appellant's Reply Br. 6–7.

have sought the warrant and conducted a lawful search. To do so, the Government must "prove that a warrant would certainly, and not merely probably, have been issued had it been applied for." *United States v. Tajeda*, 524 F.3d 809, 813 (7th Cir. 2008). "Our case law establishes that the inevitable discovery rule applies in cases, such as this one, where investigating officers undoubtedly would have followed routine, established steps resulting in the issuance of a warrant." *Marrocco*, 578 F.3d at 639–40. The Government has met its burden here by demonstrating that the officers complied with the framework set out in the Stored Communications Act.

Mr. Rosario argues that because the officers skirted the Stored Communications Act by ignoring the exigency requirement, they therefore would have skirted the warrant requirement had one been required. As we have discussed earlier, the premise of that argument has no merit. The officers did not skirt the exigency requirement. Indeed, the Government has shown that "[i]t would be unreasonable to conclude that, after discovering all of this information, the officers would have failed to seek a warrant." *Id.* at 640. Thus, the exclusion of the cell-site location information of Mr. Rosario's phone was therefore not required because it would have been inevitably discovered.[15]

---

[15] The Government also submits that, even if the district court erred in failing to suppress Mr. Rosario's cell-site location information, the error was harmless. On either of the alternate grounds proffered by the Government, its position on the merits is a solid one. We therefore see no reason why we must address this default argument, which is clearly superfluous.

**Conclusion**

Despite the conceded error in light of *Carpenter*, Mr. Rosario is not entitled to relief under the exclusionary rule. In obtaining Mr. Rosario's cell-site location information, the officers relied in good faith on the procedures set forth in the Stored Communications Act. Moreover, the officers inevitably would have discovered Mr. Rosario's cell-site location information. The district court correctly ruled in denying Mr. Rosario's motion to suppress and his motion for a new trial. The judgment of the district court is affirmed.

AFFIRMED