In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 23-1364

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DYLAN OSTRUM,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 21-cr-00069 — **Sarah Evans Barker**, *Judge.*

---

ARGUED FEBRUARY 22, 2024 — DECIDED APRIL 25, 2024

---

Before SYKES, *Chief Judge*, and RIPPLE and ST. EVE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. During a search of Dylan Ostrum's home for firearms and narcotics, Ostrum revealed that he had moved his belongings, including his car, to his father's house two hours away. It turns out the car was not at his father's (officers found it nearby) and was not even Ostrum's—a rental company had reported it stolen. But Ostrum's belongings were inside: a search of the stolen car revealed a gun,

methamphetamine, and marijuana, all stashed in two safes. The questions on appeal are whether Ostrum has standing to challenge the search of the stolen car, and if he does, whether that search violated his Fourth Amendment rights. Because Ostrum has failed to meet his burden on standing, and because the existence of probable cause otherwise justified the search under the automobile exception to the Fouth Amendment's warrant requirement, we find the answer on both counts to be no, and we affirm.

## I. Background

### A. Factual Background

The investigation into Dylan Ostrum began after law enforcement agents executed a search warrant at the Indianapolis home of Ricky Blythe. While Ostrum was not on the investigators' radar before the search of Blythe's home, that quickly changed. Agents found numerous text messages between Blythe and Ostrum on Blythe's phone showing that the two repeatedly sold each other methamphetamine and marijuana.

The investigation progressed quickly from there. Investigators learned that Ostrum had felony convictions for burglary and possession of marijuana and methamphetamine. They also became aware of statements from three confidential informants, who credibly claimed to have seen Ostrum selling firearms and narcotics out of his home in Indiana. The informants confirmed that Ostrum stored several of his own firearms at the residence, and that he would possess pound quantities of marijuana and methamphetamine at a time. One informant reported that he had delivered Ostrum several pounds of methamphetamine each week for the past several months.

Another informant stated that Ostrum drove a light blue Chrysler 300 sedan, which law enforcement observed parked outside his residence. Further investigation revealed that the Chrysler's license plates, although registered in Ostrum's name, did not correspond to the Chrysler.

Based on this evidence, law enforcement obtained a valid warrant to search Ostrum's residence. The warrant authorized the search and seizure of firearms, narcotics, and other drug distribution materials. It also permitted officers to seize keys "relating to safe deposit boxes."

The search turned up little—some ammunition, a small amount of marijuana, and a keychain—but Ostrum was present and willingly spoke with law enforcement officers. He identified the seized keys as belonging to a safe, which he emphasized "literally ha[d] nothing inside of it." He also admitted that he had obtained methamphetamine and a gun from Blythe, that he knew of Blythe's arrest, and that he was expecting a delivery of drugs from Blythe on the day of his arrest.

Yet Ostrum disclaimed having guns and drugs around, insisting that he "got rid" of them after Blythe's arrest. His wife, he said, threatened to divorce him if he did not. He explained, "I don't have any of that stuff here. I don't have any 'go' [methamphetamine] …. I got bud [marijuana]. No guns." But when officers asked where he had taken the contraband, Ostrum was evasive. He confirmed only that he had taken "pretty much" "everything" to his father's house in Pendleton, Indiana.

The Chrysler was not on the premises at the time of the search, so law enforcement probed Ostrum on its

whereabouts. Unprompted, Ostrum clarified that "everybody always thought that [car] … was mine and really I was just renting it." He provided the keys and told officers it was also at his father's house in Pendleton. So too, he averred, was the missing safe.

Law enforcement soon located the Chrysler—not in Pendleton, but in a nearby driveway. The home's occupant gave law enforcement consent to enter the property and conduct a "free air" dog sniff of the vehicle's exterior. The dog did not alert for the presence of drugs. A search of the Chrysler's Vehicle Identification Number ("VIN"), however, revealed that a rental car company had reported it stolen several months earlier.

Officers searched the vehicle and discovered two safes inside. They used the keys seized from Ostrum pursuant to the warrant to unlock both. Inside they found a loaded Glock 9mm pistol and matching ammunition, 513.5 grams of methamphetamine, around two pounds of marijuana, a digital scale, and what appeared to be a drug ledger.

**B. Procedural Background**

Law enforcement arrested and charged Ostrum with one count of conspiracy to possess with intent to distribute methamphetamine, 21 U.S.C. §§ 841(a)(1), 846; one count of possession with intent to distribute methamphetamine, 21 U.S.C. § 841(a)(1); one count of possession with intent to distribute marijuana, 21 U.S.C. §§ 841(a)(1), (b)(1)(D); and one count of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1).

Before trial, Ostrum moved to suppress the evidence found inside the Chrysler, arguing that it was the fruit of an illegal search. He did not request an evidentiary hearing. The

district court denied the motion, finding that (1) Ostrum lacked standing to challenge the search because the car was stolen; (2) the search was valid under the automobile exception because officers had probable cause to believe it contained contraband; and (3) the search was otherwise permissible as an inventory search of a lawfully impounded vehicle.

The case went to trial, and a jury convicted Ostrum on all counts. He received a 240-month sentence.

## II. Analysis

Ostrum appeals the district court's denial of his motion to suppress. He maintains that he has standing to challenge the searches of the Chrysler and the safes, and that neither the automobile nor inventory search exceptions justified them. We evaluate his claims under a "mixed standard": we review the district court's legal conclusions and conclusions on mixed questions of law and fact de novo, and we review its factual findings for clear error. *United States v. Hudson*, 86 F.4th 806, 810 (7th Cir. 2023) (citations omitted). The existence or absence of probable cause is one such mixed question of law and fact that gets a fresh look. *United States v. Williams*, 627 F.3d 247, 251 (7th Cir. 2010).

### A. Standing

Fourth Amendment standing is not "jurisdictional," but instead reflects the "idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search." *Byrd v. United States*, 584 U.S. 395, 410 (2018). The question is whether a defendant possesses a "legitimate expectation of privacy in the premises" searched. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). Ostrum asserts distinct expectations of privacy in the stolen

Chrysler and safes. We consider each in turn, recognizing that he bears the burden of establishing both a subjectively and objectively reasonable expectation of privacy in each place searched. *United States v. Walton*, 763 F.3d 655, 658 (7th Cir. 2014).

**1. The Chrysler**

The Chrysler here was stolen. This makes one thing certain under our caselaw: if Ostrum stole the car or otherwise knew it was stolen, he would have no reasonable expectation of privacy in it or its contents, and thus no standing to object to its search. *See Byrd*, 584 U.S. at 409 ("[A] person present in a stolen automobile at the time of the search may [not] object to the lawfulness of the search of the automobile." (alteration in original) (quoting *Rakas*, 439 U.S. at 141 n.9)); *Walton*, 763 F.3d at 665 ("A driver of a stolen car does not have standing to challenge a car search.").

The wrinkle here is that Ostrum denies knowing the car was stolen. This raises the question: does the *unwitting* driver of a stolen vehicle stand in the same Fourth Amendment position as a car thief? That, however, is a question we need not reach today. Even if a defendant's knowledge of the stolen nature of the vehicle has some bearing on his standing to challenge its search, "[the defendant] bears the burden of showing that he had a legitimate expectation of privacy." *United States v. Sawyer*, 929 F.3d 497, 499 (7th Cir. 2019); *see also United States v. Carlisle*, 614 F.3d 750, 758 (7th Cir. 2010). So, if Ostrum wanted to show that he was innocently driving the stolen Chrysler, he needed to offer evidence to that effect. He has not.

While Ostrum now denies knowing the car was stolen, he has failed to identify any evidence to support this assertion. *See Ho v. Donovan*, 569 F.3d 677, 682 (7th Cir. 2009) ("Assertions in an appellate brief are no substitute for evidence."). And while Ostrum did tell law enforcement that the car was a rental that did not belong to him (true, as far as it goes), that says nothing about his knowledge of the vehicle's stolen nature. Further, the Chrysler displayed license plates registered to Ostrum but associated with another vehicle, even though Ostrum claimed it was a rental. Ostrum cannot meet his burden of proof on this record.

Ostrum attempts to evade this burden by offloading it onto the government. Ostrum contends that because he claims a possessory interest in the car, the burden shifts to the government to prove he knew it was stolen. We have never held that merely claiming a possessory interest in a vehicle shifts the burden to the government to prove that the asserted privacy interest is not legitimate. We certainly did not do so in *United States v. Sholola*, the only case on which Ostrum relies. 124 F.3d 803, 816 n.14 (7th Cir. 1997). *Sholola* simply assumed the defendant had standing to challenge the search. *Id.* ("The record before us does not disclose how Sholola came to be in possession of the Acura, i.e., whether it was stolen or used with or without permission. We will assume, for purposes of our analysis, that the defendant had a legitimate expectation of privacy in the Acura, and thus has standing to challenge the search."). It did not shift that burden onto the government. So, the burden of proving a privacy interest never left Ostrum's shoulders. His failure to meet it means he cannot challenge the search of the Chrysler. *See Byrd*, 584 U.S. at 409.

### 2. The Safes

Ostrum also asserts a distinct expectation of privacy in the safes. He has none given the safes were found inside a stolen vehicle. While a person *lawfully present* in a vehicle might be able to assert a privacy interest in a container inside (even without any expectation of privacy in the car itself), *see, e.g.*, *United States v. Barber*, 777 F.3d 1303, 1305 (11th Cir. 2015); *United States v. Iraheta*, 764 F.3d 455, 462 (5th Cir. 2014), a person wrongfully present in a stolen vehicle is differently situated. A stolen car is not a safehouse that society is prepared to recognize as reasonable. *See United States v. Hargrove*, 647 F.2d 411, 412 (4th Cir. 1981) ("A person who cannot assert a legitimate claim to a vehicle cannot reasonably expect that the vehicle is a private repository for his personal effects."); *see also Sawyer*, 929 F.3d at 500 (finding that a trespasser lacked standing to challenge the search of a backpack when he "d[id] not assert that his—and therefore his backpack's—presence was lawful or offer any basis for his privacy interest in the home"); *United States v. White*, 504 F. App'x 168, 172 (3d Cir. 2012) (rejecting the defendant's claim that he had a legitimate expecation of privacy in the contents of locked box in a stolen minivan). Under the circumstances here, the driver of a stolen vehicle lacks standing as to any of its contents, "whether or not they are enclosed in some sort of a container."[1] *Hargrove*, 647 F.2d at 412. Ostrum therefore can challenge neither search.

---

[1] The Supreme Court's treatment of containers, cars, and privacy interests under the automobile exception allows us to equate property in a movable container with loose property discovered in a vehicle compartment. In *United States v. Ross*, 456 U.S. 798, 817 (1982), and *California v. Acevedo*, 500 U.S. 565, 579–80 (1991), the Court held that searches justified

**B. Automobile Exception**

Even assuming Ostrum has standing to object to the search of the Chrysler, his suppression arguments fail. The searches of the car and safes fall squarely within the automobile exception.

"Warrantless searches are per se unreasonable under the Fourth Amendment, subject to only certain exceptions." *United States v. Kizart*, 967 F.3d 693, 695 (7th Cir. 2020) (citing *Arizona v. Gant*, 556 U.S. 332, 338 (2009)). One of those is the automobile exception, which allows law enforcement to conduct a "warrantless search of a vehicle … so long as there is probable cause to believe it contains contraband or evidence of illegal activity." *United States v. Washburn*, 383 F.3d 638, 641 (7th Cir. 2004) (citing *Carroll v. United States,* 267 U.S. 132 (1925)). Authority to search the vehicle extends to all containers inside where there exists probable cause to believe they contain contraband or evidence. *United States v. Hays*, 90 F.4th 904, 907 (7th Cir. 2024) (citing *Acevedo*, 500 U.S. at 580). That is, "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of *every part of the vehicle and its contents* that may conceal the object of the search." *Wyoming v. Houghton*, 526 U.S. 295, 301 (1999) (quotation marks omitted) (emphasis in original). Probable cause is "based on a totality of the circumstances" and allows officers to "draw reasonable inferences from the facts based on their training

---

under the automobile exception extend to all containers inside, so long as law enforcement officers have probable cause to believe they contain evidence or contraband.

and experience." *United States v. Zahursky*, 580 F.3d 515, 521 (7th Cir. 2009).

Law enforcement had ample probable cause to believe the Chrysler contained contraband. The same wealth of evidence that allowed law enforcement to lawfully search Ostrum's residence for guns and drugs in the first place, coupled with Ostrum's statements during the search, gave law enforcement probable cause to search the Chrysler. Indeed, during the search Ostrum himself admitted to getting "rid of" of his guns and drugs and moving "everything," Chrysler and safes included, to his father's house.

Ostrum argues that law enforcement had no reason to believe that evidence would be in *the Chrysler*, as opposed to anywhere else. Yet in his statements to officers, Ostrum discussed the car, the safes, and the contraband together, implying that he used the Chrysler to move his belongings. That, coupled with his misdirection about the car's location, gave law enforcement good reason to think that the missing car, the missing safes, and the missing contraband would be in the same place.

We are equally unpersuaded by Ostrum's other arguments. Ostrum's claim that officers had no basis to think that the *safes* were in the Chrysler is beside the point. What matters is whether officers had probable cause to believe that guns and drugs were in car. They did. And to the extent Ostrum complains that it was insufficient for officers to rely on their knowledge that "drug traffickers frequently store their contraband in vehicles," we have long held that law enforcement experience is one of the many factors that can contribute to probable cause. *See, e.g., Hays*, 90 F.4th at 907–08.

Ostrum also argues that the dog's failure to alert for the presence of narcotics dispelled any probable cause that may have existed. *See, e.g.*, *United States v. Davis*, 430 F.3d 345, 356 (6th Cir. 2005). We disagree. Even if a negative dog sniff could impact the existence of probable cause to search for narcotics (a question we do not take up here), the possible presence of narcotics was not the only source of probable cause. Firearms were also in play. The null dog sniff did nothing to undermine officers' probable cause to believe that the Chrysler contained them.[2]

Finally, Ostrum appeals to *Collins v. Virginia* to argue that the automobile exception cannot justify the search of the Chrysler because it occurred on the curtilage of a home. 584 U.S. 586, 596 (2018). *A* home, but not Ostrum's home, and that makes a big difference. *Collins* does not categorically prohibit warrantless searches of cars parked on any curtilage, but rather forbids using the exception to justify an otherwise impermissible trespass. *Id.*; *United States v. Richmond*, 924 F.3d 404, 414–15 (7th Cir. 2019).[3] There was no trespass here—officers obtained the homeowner's written consent to enter the

---

[2] No circuit has found that a null dog sniff always dispels probable cause. Indeed, the Sixth Circuit specifically distinguished its holding from cases where, as here, "there was probable cause to justify a more extended detention." *Davis*, 430 F.3d at 356.

[3] In *United States v. Banks*, we held "that the automobile exception—which ordinarily allows officers to conduct a warrantless search of a car based on probable cause—does not apply to a vehicle parked in a partially enclosed driveway." 60 F.4th 386, 390 (7th Cir. 2023). *Banks*, like *Collins*, and unlike here, featured officers' trespass onto the curtilage.

property. Their right of access was lawful, and *Collins* is thus inapposite.[4]

Under the totality of circumstances—which here includes the evidence of Ostrum's past narcotics dealing and firearm possession, his statements to law enforcement, and the officers' experience—there was ample probable cause to believe the Chrysler contained contraband.[5] The searches of the Chrysler and safes thus safely fall within the automobile exception.[6]

AFFIRMED

---

[4] Ostrum's appeal to *Collins* suffers from another shortcoming: Ostrum lacks standing to challenge entry onto another's curtilage. *See Carlisle*, 614 F.3d at 756 ("Fourth Amendment rights are personal rights which … may not be vicariously asserted." (quoting *Rakas*, 439 U.S. at 133–34)).

[5] Separately, we have held that "[w]hen a car is reported stolen and is recovered, the police have probable cause to look in the car for some evidence of ownership." *United States v. Edwards*, 769 F.3d 509, 516 (7th Cir. 2014). Once officers found out the Chrysler was stolen, the need to confirm ownership supplied an independent basis for the search.

[6] Because we resolve this case under the automobile exception, we do not consider Ostrum's arguments under the inventory search doctrine.