In the

# United States Court of Appeals
## For the Seventh Circuit

No. 24-1522

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RICHARD WALKER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 23-CR-30012 — **Stephen P. McGlynn**, *Judge.*

ARGUED NOVEMBER 14, 2024 — DECIDED JULY 17, 2025

Before JACKSON-AKIWUMI, PRYOR, and MALDONADO, *Circuit Judges*.

PRYOR, *Circuit Judge*. Officers arrested Richard Walker at the front door of the residence of his girlfriend, Ramona Paulette, where he was staying overnight. Paulette lived with her mother, Laverne Shipp; and with her and Walker's son, Walker Jr. After arresting Walker, officers performed a protective sweep of the residence, discovering and seizing a loaded firearm beneath the mattress in Walker Jr.'s bedroom. Paulette

and Shipp later arrived home, and officers informed them of the firearm. Officers then sought and received consent from Shipp to conduct a second search of her home. During the second search, officers found drugs near a pile of men's clothing in Paulette's bedroom.

A federal grand jury indicted Walker with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and one count of possession with intent to distribute fentanyl in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Walker moved to suppress all evidence found at the Shipp residence, arguing the officers' search violated the Fourth Amendment. The district court denied the motion, finding the sweep and the search were justified. Walker then entered a conditional plea of guilty to both counts of the indictment, reserving the right to appeal the denial of his suppression motion.

On appeal, Walker argues that the firearm and drugs were discovered pursuant to an unconstitutional search for two reasons: the protective sweep of the residence was unlawful, and Shipp's consent was not sufficiently attenuated from the illegal sweep. For the reasons below, we reverse and remand to the district court.

## I.    BACKGROUND

### A. Factual Background

On October 28, 2022, officers serving as part of the U.S. Marshals Great Lakes Regional Fugitive Task Force executed a state arrest warrant for Walker at the residence of Laverne Shipp. At the time, Walker was on monitored release with St. Clair County, Illinois, Probation for unlawful possession of

firearm ammunition by a felon and retail theft, but had removed his ankle monitor.

Upon arrival at the Shipp residence, officers knocked on the door several times. Walker's son, Walker Jr., eventually opened the door and stepped outside; when asked, he told officers he was unsure who else was inside the residence. Shortly thereafter, Walker emerged from the residence and was arrested outside the front door without incident.

Officers decided to perform a protective sweep of the residence. The sweep included a search of Walker Jr.'s bedroom, where one officer, Officer Blackburn, discovered a firearm underneath the mattress. The mattress sat directly on a box spring, and the box spring laid on top of the floor. Another officer, Special Agent Green with the Bureau of Alcohol, Tobacco, Firearms and Explosives, photographed and seized the firearm.

While officers were still on the scene, Shipp and Paulette arrived home. They informed the officers that Walker stayed at their residence most nights. Officers advised them of the firearm discovered in Walker Jr.'s bedroom and requested Shipp's consent to conduct another search of the home. Shipp consented upon completing a voluntary consent form. This second search uncovered fentanyl, empty pill capsules, a pill press, a pipe, scales, and Walker's credit card near a pile of men's clothing in Paulette's bedroom.

**B. Procedural History**

Walker moved to suppress all evidence obtained at Shipp's home. He argued the protective sweep was unlawful under the Fourth Amendment such that the exclusionary rule required suppressing the firearm. He also urged the district

court to decline to apply the inevitable discovery exception to the exclusionary rule because the firearm would not have been discovered but for the unlawful protective sweep. Finally, he argued that Shipp's consent did not justify the warrantless search of the residence because it was tainted by the unlawful protective sweep.

The district court denied the motion, concluding that the protective sweep was lawful. In the alternative, it opined that even if the protective sweep had been unlawful, the attenuation exception to the exclusionary rule would allow the government to introduce the firearm into evidence. It further concluded that Shipp's consent justified the subsequent warrantless search. The district court did not analyze the inevitable discovery exception to the exclusionary rule.

Walker entered a conditional guilty plea as to all charges, reserving his right to appeal the district court's denial of his motion to suppress. The judge sentenced Walker to 51 months' imprisonment, followed by three years' supervised release, and the payment of a $200 special assessment.

## II.   ANALYSIS

On appeal, Walker argues that the district court erred by failing to suppress the firearm found in Walker Jr.'s bedroom and the drug evidence found in Paulette's bedroom. According to Walker, these items were discovered as the result of an illegal search of the Shipp residence, in violation of the Fourth Amendment.

When reviewing a district court's denial of a motion to suppress, we "review the district court's legal conclusions de novo and its factual findings for clear error." *United States v. Williams*, 106 F.4th 639, 653 (7th Cir. 2024) (internal quotations

and citations omitted). Mixed questions of law and fact are reviewed de novo. *United States v. Hudson*, 86 F.4th 806, 810 (7th Cir. 2023).

### A. The Firearm

The parties raise three issues in relation to the firearm. First, whether Walker has standing under the Fourth Amendment to challenge the search of Walker Jr.'s bedroom. Second, whether the search of the home, including Walker Jr.'s bedroom, was a lawful protective sweep. And third, whether, if the search was unlawful, the exclusionary rule applies such that the firearm must be suppressed.

### 1. *Fourth Amendment Standing*

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. For that reason, a warrantless search of a home is presumptively unreasonable under the Fourth Amendment unless the government can show, "by a preponderance of the evidence, that the search was reasonable under a valid exception to the warrant requirement." *United States v. Davis*, 44 F.4th 685, 688 (7th Cir. 2022).

The government requests that we affirm the denial of Walker's motion to suppress on the basis that Walker did not have standing under the Fourth Amendment to challenge the search of Walker Jr.'s bedroom.

"Fourth Amendment standing is not 'jurisdictional,' but instead reflects the 'idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search.'" *United States v. Ostrum*, 99 F.4th 999, 1004 (7th Cir. 2024) (quoting *Byrd v. United*

*States*, 584 U.S. 395, 410 (2018)). Therefore, when determining standing under the Fourth Amendment, we ask whether a defendant has a "legitimate expectation of privacy" in the place searched. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). "A legitimate expectation of privacy exists when the defendant exhibits a subjective expectation of privacy [in the location searched] and the expectation is one that society is prepared to recognize as reasonable." *United States v. Pitts*, 322 F.3d 449, 456 (7th Cir. 2003).

Walker was an overnight house guest at the Shipp residence, and it is well-established that a person has a legitimate expectation of privacy in a home in which they are an overnight guest. *Minnesota v. Olson*, 495 U.S. 91, 96–97 (1990). The government requests that we depart from this principle, however, because a state court order required Walker to reside at his mother's home, and not the Shipp residence. In that respect, the government urges that Walker was wrongfully present at the Shipp residence such that his expectation of privacy in the residence was unreasonable.

As a general matter, the government is correct that a defendant's unlawful presence in a location may render the defendant's expectation of privacy in that location unreasonable. *See United States v. Curlin*, 638 F.3d 562, 565–66 (7th Cir. 2011). For instance, a defendant who has been evicted from a residence does not have a legitimate expectation of privacy in that residence. *Id.* at 565. But in this case, Walker was welcome in Shipp's home. And while Walker's decision to reside at Shipp's residence may have violated a condition of his monitored release, it does not deprive him of a Fourth Amendment right to privacy in that residence as an overnight house guest.

The government asks us to analogize this case to those from other circuits involving no-contact protective orders that barred a defendant from a particular place. For instance, the government directs us to *United States v. Cortez-Dutrieville*, which found unreasonable a defendant's expectation of privacy in a dwelling where the defendant was present in violation of a court order that prohibited him from entering that specific dwelling. 743 F.3d 881, 883–85 (3d Cir. 2014). The government cites *United States v. Schram*, 901 F.3d 1042, 1044–45 (9th Cir. 2018), and *United States v. Bey*, 825 F.3d 75, 77–79 (1st Cir. 2016), for similar propositions.

These cases support a general principle that a person who is legally prohibited from being at a specific residence cannot claim a legitimate privacy interest in that residence. *See Cortez-Dutrieville*, 743 F.3d at 884–85; *Schram*, 901 F.3d at 1044. But here, the government identifies no order prohibiting Walker from being at the Shipp residence. Walker was not evicted from Shipp's residence nor subject to a protective order barring him from the residence. And we decline to announce a broader rule pursuant to which the Fourth Amendment privacy interest of a person on house arrest extends no further than the home in which the person is ordered to reside. Accordingly, we agree with the district court that Walker's status as an overnight house guest, who spent most nights at the Shipp residence, gave him a legitimate expectation of privacy in that residence. Walker has standing under the Fourth Amendment to bring the motion to suppress.

### 2. *Reasonableness of the Search*

We turn now to whether the warrantless search of Shipp's residence, during which officers discovered and seized a

firearm in Walker Jr.'s bedroom, was reasonable under the Fourth Amendment.

Generally, searches of a residence require a warrant to satisfy the Fourth Amendment. *Peals v. Terre Haute Police Dept.*, 535 F.3d 621, 627 (7th Cir. 2008). However, there are exceptions to the warrant requirement. For example, incident to a lawful arrest and absent a search warrant, officers may search "spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Maryland v. Buie*, 494 U.S. 325, 334 (1990). A warrantless search "[b]eyond that"—*i.e.*, a "protective sweep"—may be initiated if supported by "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id*. at 334–35.

Because the government did not contend below nor on appeal that the warrantless search was justified because the place of the search immediately adjoined the place of arrest, we only address the question of whether the search of the home extending into Walker Jr.'s bedroom was a lawful protective sweep. To that end, the district court found initiation of the protective sweep justified because "officers had information that there were others that could be on the premises." It further found reasonable lifting the mattress in Walker Jr.'s bedroom given that "[t]he officers involved in the search stated that they believed that a person could hide underneath a mattress at the time of the search" and because it appeared possible to the district court that "an attack could be launched from between the mattress and the box spring."

As an initial matter, the district court erred by concluding that officers may initiate a protective sweep following an arrest merely based on the possibility that other persons could be present. More is required. A protective sweep requires officers to have reason to believe the premises harbor not just a person, but a person who poses a *danger* to those on the scene. *Buie*, 494 U.S. at 334; *see also United States v. Burrows*, 48 F.3d 1011, 1017 (7th Cir. 1995) (protective sweep justified where the defendant had a history of violence and officers were refused entry but heard movement inside the apartment); *United States v. Barker*, 27 F.3d 1287, 1289–92 (7th Cir. 1994) (protective sweep justified where officers arrested the defendant inside the home and had previously seen a weapon inside the home during an investigation into drug dealing by the defendant's brother).

In any event, we note that in justifying the protective sweep here, the government does not only invoke the possibility that others were present. Rather, it also argues that the arresting officers knew Walker had been charged with unlawful possession of firearm ammunition and had a criminal history that included robbery. From this, the government asks us to infer that an officer could reasonably have believed someone else posing a danger was on the premises, justifying the protective sweep of the house.

As our cases applying *Buie* make clear, the reasonable belief inquiry must be based on "actual historical facts" or "other articulable reasons for believing that, at the present, the [home] presents a real threat to the safety of the officers." *Burrows*, 48 F.3d at 1016. In other words, a protective sweep must not be based on "a 'mere inchoate and unparticularized suspicion or hunch' of danger." *United States v. Tapia*, 610 F.3d

505, 510 (7th Cir. 2010) (quoting *Buie*, 494 U.S. at 332). That officers suspected Walker—who had already been arrested—to be dangerous says nothing about the dangerousness of Paulette and Shipp, the other known residents who resided at the dwelling. Moreover, this is not a case where officers had available to them facts indicating the residence was used for illegal activity by individuals other than the defendant, *see Tapia*, 610 F.3d at 511, nor a case where officers witnessed evasive behavior of persons inside the premises, *see United States v. Contreras*, 820 F.3d 255, 268 (7th Cir. 2016).

Ultimately, however, we need not decide whether there were sufficiently articulable facts to justify initiating a protective sweep. As we explain next, even assuming the protective sweep was justified, it became unlawful in scope when officers lifted the mattress in Walker Jr.'s bedroom.

Because a protective sweep is "aimed at protecting the arresting officers," it is "not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found." *Buie*, 494 U.S. at 335. It must "last[] no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." *Id*. at 335–36.

Walker contends that the protective sweep became unreasonable in scope when the officers lifted the mattress in Walker Jr.'s bedroom because, under the circumstances, no reasonable officer would have believed "a dangerous assailant was hiding underneath the mattress in a hollowed-out box spring waiting to launch an attack." We agree. The government failed to identify anything in the record to indicate that the officers here had reason to believe the area between the mattress and box spring had been hollowed out such that

lifting the mattress would be "necessary to dispel the reasonable suspicion of danger." *Id.* And while we acknowledge that the district court broadly opined from photographs in the record that, despite awkward positioning, an attack could be launched from between the mattress and box spring, we have explained that "a district court must make enough findings to enable us to review the record in 'a reasoned and meaningful manner.'" *United States v. Fields*, 371 F.3d 910, 916 (7th Cir. 2004) (quoting *United States v. Talkington*, 843 F.2d 1041, 1048 (7th Cir. 1988)). Here, the district court did not explain why the configuration rendered reasonable a belief that a dangerous individual could launch an attack from between the mattress and box spring in Walker Jr.'s bedroom.

Although it may have theoretically been possible for a person to have hollowed the inside of the mattress or box spring to create a hiding place from which to attack, theoretical possibilities cannot be enough. Finding otherwise would permit officers to lift a mattress in every protective sweep, regardless of the reasonableness of their suspicions or configuration of the premises. "We continue to recognize that 'the sweep is a device that can easily be perverted to achieve ends other than those acknowledged as legitimate in *Buie*.'" *United States v. Starnes*, 741 F.3d 804, 810–11 (7th Cir. 2013) (quoting *Burrows*, 48 F.3d at 1017).

In those other circuits that have found reasonable searches underneath mattresses during a protective sweep, the circumstances of those cases have been materially distinguishable from the circumstances here. In *United States v. Bass*, the Sixth Circuit found reasonable a search underneath a bed in light of an officer's testimony that the bedframe was high enough for a person to hide underneath. 315 F.3d 561, 564 (6th Cir. 2002).

*Bass* involved no request that the court assume, based only on speculation, that a dangerous person had hollowed out the bed.

In *United States v. Silva*, the Fifth Circuit found reasonable a search inside a wooden box on which a waterbed rested, given an officer's testimony that "he believed the wooden box … was hollow and large enough for a person to hide inside." 865 F.3d 238, 243 (5th Cir. 2017). But here, the government does not identify what in this record would have rendered reasonable an officer's belief that Walker Jr.'s mattress or box spring was hollowed out. Rather, the government merely provides a blanket and context-blind statement that individuals sometimes hide underneath mattresses.

Finally, in *United States v. Garcia-Lopez*, the Fifth Circuit found reasonable a belief that a person for whom officers were searching was "hidden … in a hollowed box spring," as officers "noticed a light on before hearing a door shut" and observed suspicious behavior of a person sitting on the bed. 809 F.3d 834, 839 (5th Cir. 2016). Similar circumstances are absent here. We have no record of suspicious behavior within Walker Jr.'s bedroom to suggest someone was hiding between the bed and box spring.

Cases in which other circuits declined to find reasonable searches underneath mattresses prove more analogous to the facts here. In *United States v. Blue*, the Second Circuit found unreasonable a search underneath a mattress despite the physical possibility that someone was hiding "in a cavity in the box spring" because "the officers lacked articulable facts at the time of the sweep to support such an inference." 78 F.3d 56, 61 (2d Cir. 1996). For instance, there was "no indication … of any movement" when officers entered the room, nor any

"indication that the officer's search was the result of a rise or bulge in the mattress" or "anything unusual about the bed." *Id*. Similarly, in *United States v. Ford*, the D.C. Circuit found an agent "plainly exceeded the permissible scope of a protective sweep" by lifting a mattress, given the agent's failure to suggest that he believed he would find a person hiding underneath the mattress and admission that it would have been virtually impossible to do so. 56 F.3d 265, 270 (D.C. Cir. 1995). The reasoning of both cases holds here. Accordingly, we find that lifting the mattress in Walker Jr.'s bedroom on these facts rendered the protective sweep unreasonable in scope.

### 3. *The Exclusionary Rule and Its Exceptions*

"[W]hen the government obtains evidence in violation of an individual's Fourth Amendment rights, the remedy is generally the exclusion"—*i.e.*, suppression—"of that evidence … at trial." *United States v. McGill*, 8 F.4th 617, 624 (7th Cir. 2021). This exclusionary rule "encompasses both the 'primary evidence obtained as a direct result of an illegal search or seizure,' and … 'evidence later discovered and found to be derivative of an illegality,' the so-called 'fruit of the poisonous tree.'" *Utah v. Strieff*, 579 U.S. 232, 237 (2016) (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984)). But the rule "does not apply automatically." *McGill*, 8 F.4th at 624. Instead, it applies only "where its deterrence benefits outweigh its substantial social costs," such that suppression is "our last resort, not our first impulse." *Strieff*, 579 U.S. at 237–38 (quoting *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)). Accordingly, although we find the firearm was illegally obtained when it was seized during an unlawful protective sweep, the firearm need not be suppressed if an exception to the exclusionary rule applies. *See United States v. Leon*, 468 U.S. 897, 906 (1984) (the

question of whether the exclusionary rule applies is separate from the question of whether a defendant's Fourth Amendment rights have been violated).

At issue here are the good-faith, attenuation, and inevitable discovery exceptions to the exclusionary rule. The last two of these exceptions "involve the causal relationship between the unconstitutional act and the discovery of evidence," with the inevitable discovery doctrine allowing the admission of evidence "that would have been discovered even without the unconstitutional source"; and the attenuation doctrine allowing the admission of evidence "when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance." *Strieff*, 579 U.S. at 238. We address each exception in turn.

### a. Good-Faith Exception

The government argues for the first time on appeal that the good-faith exception to the exclusionary rule should apply. The government may present this "new argument[] for affirmance" despite not raising it before the district court. *United States v. Cade*, 93 F.4th 1056, 1061 (7th Cir. 2024) (government's invocation on appeal of an exception to the exclusionary rule not raised before the district court was not waived where the defendant did not file a reply brief to argue waiver and the record in the district court was "adequately developed").

The good-faith exception applies when officers "act with an objectively reasonable good-faith belief that their conduct is lawful." *United States v. Rainone*, 816 F.3d 490, 495 (7th Cir. 2016) (internal quotation and citation omitted). For example, suppression is not required when officers conduct a search

"in reasonable reliance on binding precedent." *United States v. Banks*, 60 F.4th 386, 391 (7th Cir. 2023) (quoting *Davis v. United States*, 564 U.S. 229, 241 (2011)).

The government fails to carry its burden of showing that officers acted in objective good faith when lifting the mattress in Walker Jr.'s bedroom. *See United States v. Matthews*, 12 F.4th 647, 653 (7th Cir. 2021). The government's position rests on a request that we find sufficient what it describes as an "abundance of nonbinding cases holding that where officers have reason to believe other persons are present, they may conduct a protective sweep that includes checking under mattresses." (App. Dkt. 10 at 29).

We note that the government does not cite any Seventh Circuit case holding that the good-faith exception applies when an officer's conduct is in line with non-binding caselaw. But even assuming an "abundance" of non-binding caselaw warrants applying the good-faith exception, there was no such abundance of non-binding caselaw to support the search here. Instead, and as explained above, out-of-circuit caselaw *refutes* the proposition that officers may lift mattresses during protective sweeps when they lack particularized suspicion that a dangerous person is hiding, and is able to hide, underneath the mattress. We therefore find the good-faith exception does not apply.

### b. *Attenuation Exception*

The attenuation exception to the exclusionary rule allows the government to introduce evidence "when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that 'the interest protected by the [Fourth

Amendment] … would not be served by suppression.'"
*Strieff*, 579 U.S. at 238 (quoting *Hudson*, 547 U.S. at 593). The
doctrine "evaluates the causal link between the government's
unlawful act and the discovery of evidence." *Id*.

The district court held that the attenuation exception ap-
plied because Shipp consented to a search of the entire home
following the officers' protective sweep and seizure of the
firearm. In other words, the district court found that Shipp's
consent served as an intervening circumstance between the
unlawful conduct (*i.e.*, the protective sweep) and the evidence
seized (*i.e.*, the firearm).

Walker asserts that the district court erroneously applied
the attenuation exception when, in his view, the inevitable
discovery doctrine was the appropriate analytical framework
to apply. In particular, Walker argues the attenuation excep-
tion is meant to allow the government to introduce evidence
discovered or seized *after* an intervening event that is suffi-
ciently attenuated from an earlier illegal search. But because
the firearm here was discovered and seized *during* an illegal
protective sweep, and not after Shipp consented to the search,
Walker urges the attenuation exception should not apply.

The government does not argue that the attenuation ex-
ception should apply in relation to the firearm. Rather, the
government only presses that the good-faith and inevitable
discovery exceptions justify the warrantless search.

The district court erred in applying the attenuation excep-
tion. To be sure, the attenuation exception can apply when ev-
idence is "obtained *after* an illegal … search." *Brown v. Illinois*,
422 U.S. 590, 597 (1975) (emphasis added); *see also United
States v. Davis*, 44 F.4th 685, 690–91 (7th Cir. 2022). But the

attenuation exception cannot apply where the evidence was discovered and seized *during* an initial unlawful search and before a consensual search. *Davis*, 44 F.4th at 690–91 (citing *United States v. Cooper*, 24 F.4th 1086 (6th Cir. 2022)). Indeed, "[e]vidence obtained as a direct result of an unconstitutional search or seizure is plainly subject to exclusion." *Segura v. United States*, 468 U.S. 796, 804 (1984). That is what happened here. The officers seized the firearm during their unlawful search, such that Shipp's subsequent consent could not, as a matter of logic, have served as the means through which the government obtained the firearm. *See United States v. Robeles-Ortega*, 348 F.3d 679, 684–85 (7th Cir. 2003). Because "[t]he [firearm] was seized during the initial unlawful search"—and not during the consensual search—"inevitable discovery, not attenuation, is the right tool for the job." *Cooper*, 24 F.4th at 1095–96. To that end, we agree with Walker that the district court erroneously applied the attenuation exception.

### c. *Inevitable Discovery Exception*

The inevitable discovery exception applies "where the government establishes by a preponderance of the evidence that the information [unlawfully discovered] ultimately or inevitably would have been discovered by lawful means." *United States v. Rosario*, 5 F.4th 706, 713 (7th Cir. 2021) (internal quotations and citations omitted). The government must show "two criteria are met: First, it must show that it had, or would have obtained, an independent, legal justification for conducting a search that would have led to the discovery of the evidence; second, [it] must demonstrate that it would have conducted a lawful search absent the challenged conduct." *Id*. (quoting *United States v. Marrocco*, 578 F.3d 627, 637–38 (7th Cir. 2009)).

The government argues Shipp's consent to search the residence would have inevitably led to discovery of the firearm, and that the consensual search was lawful because Shipp's consent was voluntary. As support, it notes that the consent form Shipp signed stated that her consent had been given voluntarily.

Walker argues the firearm would not have inevitably been discovered by lawful means absent the illegal protective sweep. For one, he asserts the officers only requested Shipp's consent to search the home because they had uncovered a loaded firearm during an unlawful search. *See Marrocco*, 578 F.3d at 638 (suggesting that the inevitable discovery exception would not apply "where the investigating officers learned new information during an illegal search and, based on that information, took investigatory steps that they would not have taken otherwise"). Moreover, Walker argues that had the officers not told Shipp about their discovery during the unlawful search, Shipp would not have consented to the second search. To this end, Walker directs us to an affidavit in which Shipp attests she would not have consented to the search had the officers not informed her about their discovery of the firearm.

The district court did not decide whether the inevitable discovery exception applied, despite the exception being raised by the parties. Instead, it understood the parties to have placed the attenuation exception at issue. Because the district court applied the wrong legal test by discussing the attenuation exception rather than inevitable discovery exception, and because the district court did not render any factual findings to allow an assessment of whether the inevitable discovery

doctrine applies, we remand for further proceedings on inevitable discovery.

On remand, the district court must "examine the circumstances as they existed just before the protective sweep to determine what would have happened had the protective sweep never occurred." *See Cooper*, 24 F.4th at 1096; *see also United States v. Brown*, 79 F.3d 1499, 1510 (7th Cir. 1996) (remanding for the district to decide a factual issue as to the reasonableness of a protective search but requiring that the determination be made "on the existing record").

**B. Drug Evidence**

Walker also argues that the contraband found during the consensual search of Paulette's bedroom should have been suppressed because Shipp's consent to search the home was involuntary, given that it was tainted by the illegal protective sweep. The government responds that Walker forfeited this argument in relation to the drug evidence because he did not raise involuntary consent as an independent claim of suppression of the drug evidence. We disagree.

Before the district court, Walker's motion to suppress argued that Shipp's consent was tainted by the illegal protective sweep. As a result, Walker did not limit his suppression motion to the firearm, and instead requested that the district court suppress "all evidence seized" from Shipp's residence—which included the drug evidence found during the subsequent search. To the extent the government seeks to argue that Walker was required to do more to preserve his request to exclude the evidence found following Shipp's alleged consent, we cannot agree. It is the government that bears the burden of proving a warrantless search of a residence was

consensual or that some other exception to the exclusionary rule applies. *See, e.g., United States v. McGraw*, 571 F.3d 624, 628 (7th Cir. 2009); *United States v. Rodriguez*, 831 F.2d 162, 167 (7th Cir. 1987).

We acknowledge that the district court concluded that Shipp's consent justified the second search. However, it reached this conclusion upon finding the protective sweep was lawful, consequently rejecting Walker's position that the consent was tainted by illegality. Because we find the protective sweep unconstitutional, we also direct the district court to address anew whether Shipp's consent provided independent legal justification to uphold the search and seizure of contraband in Paulette's bedroom.[1]

### III.    CONCLUSION

For these reasons, we REVERSE the district court's denial of Walker's suppression motion and REMAND for further proceedings consistent with this opinion.

---

[1] Having reviewed the parties' Stipulation of Fact and Reservation of Right to Appeal Ruling on Suppression Motion (Dkt. 46) and without a transcript of the plea hearing, we also note that we are unable to discern the factual basis the court had to enter judgment on the charge of possession with intent to distribute fentanyl. *See* FED. R. CRIM. P. 11(b)(3). The Stipulation only contains facts relating to the firearm charge.